No. 80-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

MONTANA NATIONAL BANK, a corp.,

Plaintiff and Respondent,

-vs-

ROY E. MICHELS, JR., and
SHIRLEY JEAN MICHELS, and
JAMES V. CYBULSKI,

Defendants and Appellants.

---

Appeal from: District Court of the Fifteenth Judicial District,
In and for the County of Sheridan, The Honorable
M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Jerome Wallander, Froid, Montana
Robert Hurly, Glasgow, Montana

For Respondent:

John R. Hunt, Plentywood, Montana

---

Submitted on Briefs: November 26, 1980

Decided: MAR 4 - 1981

Filed: MAR 4 - 1981

Thomas J. Kearney
_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff Bank brought this action in the District Court of the Fifteenth Judicial District of the State of Montana, in and for the County of Sheridan, seeking money due and owing on a promissory note and seeking to set aside and have declared as fraudulent conveyances two transfers of a parcel of land. The District Court, sitting without a jury, found in favor of plaintiff Bank, ordering payment by defendant Roy E. Michels, Jr., and setting aside the transfers as fraudulent conveyances. From that judgment defendants appeal.

On December 11, 1973, defendant Roy E. Michels, Jr., executed a promissory note payable to plaintiff Bank in the principal sum of $74,603.65 plus interest thereon at the rate of 9 percent per annum from the date of such note. The due date of the note was December 11, 1974.

Prior to the execution of the note, on September 1, 1972, Roy Michels entered into a contract for deed to purchase from Helen Hodges approximately 280 acres of land situated in Sheridan County, Montana, for a sum of $35,000. The subsequent transfers of this parcel are the subjects of this litigation.

On December 16, 1974, Roy Michels conveyed and assigned all of his interest in the contract for deed and the above-described real property to his wife, defendant Shirley Jean Michels, in consideration of the sum of one dollar. At the time of this conveyance, the District Court found the fair market value of the property to be $41,508.

The District Court found that at the time of the

-2-

conveyance to his wife defendant Roy Michels owed the Bank the total sum of $81,504.49, including principal and accrued interest, with regards to the promissory note dated December 11, 1973. The court also found that, as a result of the transfer on December 16, 1974, Roy Michels was rendered insolvent and had a negative net worth of $11,661.99.

As a matter of law the District Court concluded that the conveyance of December 16, 1974, was fraudulent as to plaintiff in that it was made with the actual intent to delay, defraud and hinder plaintiff Bank as a creditor and in that it was made without fair consideration and rendered defendant insolvent. The District Court held that Shirley Michels was not a bona fide purchaser for value with respect to this conveyance and declared the conveyance be set aside as fraudulent.

On February 19, 1975, Shirley Michels assigned and conveyed all of her interest in the contract for deed to defendant James V. Cybulski, an uncle of defendant Roy Michels. Roy Michels joined in this conveyance and assignment to Cybulski. At the time of this conveyance, the District Court found that the market value of the land was $41,508.

The purported consideration for this conveyance consisted of the following items: (1) Cybulski assumed the outstanding principal and accrued interest on the existing contract for deed, such sum being $25,483.30; (2) Cybulski paid numerous creditors of Roy Michels in the total amount of $11,879.26, none of which was owed by Shirley Michels; and (3) Cybulski forgave an antecedent debt owed to him by Roy Michels in the amount of $1,200.

The District Court found that Roy Michels was indebted to the Bank in the amount of $82,129 at the time of the conveyance to Cybulski with regards to the promissory note. The court also found that on February 19, 1975, prior to the transfer to Cybulski, Michels had a negative net worth of $57,478 and after the transfer, he had a negative net worth of approximately $45,598.

As a matter of law, the District Court concluded that the transfer of February 19, 1975, be set aside as a fraudulent conveyance in that it was made without fair consideration at a time when defendant Michels was insolvent and that defendant had the intent to hinder, delay and defraud the Bank as a creditor. The court also held that Cybulski did not have the actual fraudulent intent to defraud, delay or hinder the Bank as creditor, but as consideration Cybulski only gave the sum of $25,483.30 because the other items--the cancellation of the antecedent debt and the payment of creditors--did not consist of fair consideration for the reason that defendant Shirley Michels, as grantor, was not obligated under the indebtedness paid or forgiven by Cybulski.

The District Court set aside the two transfers as fraudulent based on defendant's intention and insolvency. A determination of defendant's intention will be dispositive of this appeal; therefore, it is unnecessary to determine the issue of insolvency. The question and arguments hinge on substantiality of evidence.

Section 31-2-314, MCA, provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay,

or defraud either present or future creditors is fraudulent as to both present and future creditors."

The difficulty in establishing a conveyance as fraudulent was characterized by Justice DeWitt in Merchants' National Bank v. Greenhood (1895), 16 Mont. 395, 41 P. 250, in the following manner:

> "Fraud cannot often be proven by direct evidence. Fraud conceals itself. It does not move upon the surface in straight lines. It goes in devious ways. We may with difficulty know 'whence it cometh and whither it goeth.' It 'loveth darkness rather than light, because its deeds are evil.' It is rarely that we can lay our hand upon it in its going. We are more likely to discover it at its destination, before we know that it has started upon its sinuous course. When we so discover it, the searchlight of a judicial investigation goes back over its trail and lightens it from beginning to end. As the woodsman follows his game by slight indications, as a broken twig or a displaced pebble, so fraud may become apparent by innumerable circumstances, individually trival . . but in their mass 'confirmation strong as proofs of holy writ.'" 41 P. at 259.

Actual fraudulent intent within the meaning of the Uniform Fraudulent Conveyance Act may be established by circumstantial evidence. Continental Bank v. Marcus (1976), 242 Pa.Super. 371, 363 A.2d 1318; see also, Fross v. Wotton (1935), 3 Cal.2d 384, 44 P.2d 350. Where the effect of a particular transaction with a debtor is to hinder, delay or defraud creditors, the law infers or supplies the intent, even though there may be no direct evidence of a dishonorable motive but, on the contrary, an actual, honest, but mistaken, motive exists. National Bank of Anaconda v. Yegen (1928), 83 Mont. 265, 271 P. 612.

We have previously used "badges of fraud" to determine if a conveyance is fraudulent and should be set

aside. In Humbird v. Arnet (1935), 99 Mont. 499, 512, 44 P.2d 756, 761, we stated:

> "Fraud in cases where it is sought to set aside fraudulent conveyances, and thereby reach assets on behalf of the creditor or other person claiming to be entitled to such assets, is ordinarily indicated and adjudged by the presence of what the law has come to denominate 'badges of fraud.' They are said to be facts which throw suspicion on a transaction, and which call for an explanation. It has been said that they are inferences drawn by experience from the customary conduct of mankind, and that they afford grounds of inference from which the court or jury are authorized to conclude that a transaction surrounded by them is fraudulent. More simply stated, they are signs or marks of fraud. They do not of themselves or per se constitute fraud, but they are facts having a tendency to show the existence of fraud, although their value as evidence is relative not absolute. They are not usually conclusive proof; they are open to explanation. They may be almost conclusive, or they may furnish merely a reasonable inference of fraud, according to the weight to which they may be entitled from their intrinsic character and the special circumstances attending the case. Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent . . ."

The generally recognized badges of fraud are the lack of consideration for the conveyance, the transfer of the debtor's entire estate, relationship between transferor and the transferee, the pendency or threat of litigation, secrecy or hurried transaction, insolvency or indebtedness of the transferor, departure from the usual method of business, the retention by the debtor of possession of the property, and the reservation of benefit to the transferor. 37 Am.Jur.2d Fraudulent Conveyances, § 10 at 701.

It is undisputed that on December 16, 1974, the date of the property conveyance from Roy to Shirley Michels, the

two parties were legally married. This Court has said on many occasions that a court cannot scrutinize too closely the relation between husband and wife with respect to business dealings between them where creditors are concerned. Keller v. Flanagan (1923), 66 Mont. 144, 158, 213 P. 222, 225. The marital relation is often a convenient means for the perpetration of a fraud, and when claims of indebtedness are made between husband and wife, they must be subjected to the most searching examination, if not indeed suspicion. Lambrecht v. Patten (1895), 15 Mont. 260, 38 P. 1063; Koopman v. Mansolf (1915), 51 Mont. 48, 149 P. 491. Of course, the fact that such relationship exists between a grantor and a grantee is not of itself a badge of fraud. Hale v. Belgrade Co. (1925), 75 Mont. 99, 242 P. 425; Harrison v. Riddell (1922), 64 Mont. 466, 210 P. 460.

Based on appraisals given at trial the fair market value of the land at the time of conveyance to Shirley Michels was $41,508. However, she paid only one dollar in consideration. We have long recognized inadequacy of consideration as a badge of fraud. Dick v. King (1927), 80 Mont. 40, 257 P. 1022; Roman v. Albert (1928), 81 Mont. 393, 264 P. 115. In Bump on Fraudulent Conveyances (4th Ed.), § 57, we find this language:

> "To justify an inference of fraud from the inadequacy of the price alone, the consideration must be so clearly below the market value as to strike the understanding at once with the conviction that such a sale never could have been made in good faith."

At the time of the conveyance to his wife, Roy Michels was indebted to plaintiff in the amount of approximately $80,000. This debt was in addition to various other liabilities.

In financial statements submitted to the Bank by Roy Michels, the subject land represents a substantial asset. Michels, however, failed to notify the Bank of a planned or consummated conveyance to his wife. In fact, it was not until February 17, 1975, that plaintiff Bank learned of the conveyance through its own investigations.

After the conveyance, Roy Michels retained possession of the land. His explanation of the transfer was that it was for estate planning purposes and to provide security for his wife in the event of his death. However, in light of the above facts surrounding the transaction and the conveyance of the land to Cybulski two months later, this explanation bears no logical relationship to the events which actually occurred.

We hold the foregoing evidence substantiates a finding that the conveyance of December 16, 1974, was made with actual intent on the part of Roy Michels, Jr., to hinder, defraud and delay plaintiff Bank as a creditor. We also agree with the District Court that Shirley Michels was not a bona fide purchaser for value and that the Bank is entitled to have the conveyance declared fraudulent and set aside.

On February 17, 1975, defendant Roy Michels and his attorney met with Bank officials to discuss Michels' financial problems and possible solutions. At this meeting, liquidation of assets and bankruptcy were discussed. The vice president of the Bank testified that the meeting was the first time the Bank learned of the conveyance from Roy to Shirley Michels. At that time defendant promised officials that he would not transfer the land for a period

of ninety days.

Two days after this meeting, on February 19, 1975, without notifying the Bank, defendants Roy and Shirley Michels conveyed and assigned all interests in the real property to defendant Cybulski, the uncle of Roy Michels. This transaction occurred after only four or five days of negotiations. As stated previously, secret or hurried transactions or transactions made under threat of litigation are considered badges of fraud. See United States v. Leggett (6th Cir. 1961), 292 F.2d 423, cert. denied 368 U.S. 914, 82 S.Ct. 194, 7 L.Ed.2d 131, reh. denied 82 S.Ct. 476, 368 U.S. 979, 7 L.Ed.2d 441; Matter of Estate of Reed (Wyo. 1977), 566 P.2d 587.

It is undisputed that on February 19, 1975, defendant Roy Michels owed the Bank over $82,000, with regards to the promissory note dated December 11, 1973. Defendant was also indebted to numerous other creditors at that time.

Once again, after the conveyance to Cybulski, both Roy and Shirley Michels retained possession and lived on the property without paying any rent.

At the time of conveyance to Cybulski, the fair market value of the land was $41,508. As purported consideration, Cybulski (1) assumed the outstanding principal and interest on the contract for deed amounting to $25,483.30, of which $19,577.73 was actually paid at the time of trial; (2) paid numerous creditors of Roy Michels in the amount of $11,879.26; and (3) forgave an antecedent debt owed to him by defendant in the amount of $1,200. We agree with the trial court that the last two items given did not consist of valid consideration for the reason that Shirley

Michels, as grantor, was not obligated under the indebtedness paid or forgiven by Cybulski. See Hansen v. Cramer (1952), 39 Cal.2d 321, 245 P.2d 1059.

We hold that the secret conveyance of February 19, 1975, for inadequate consideration, while defendant was indebted to the Bank and under the threat of bankruptcy, was made with the actual intent on the part of Roy E. Michels, Jr., to defraud, hinder and delay the Bank as creditor, and, therefore, must be set aside as a fraudulent conveyance.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-