No. 88-205

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

ROBERT O'CONNOR,

   Plaintiff and Appellant,

 -vs-

J. R. LEWIS, E. A. ATKINSON and
RIVERSIDE INVESTMENT,

   Defendants and Respondents.

---

APPEAL FROM: District Court of the Fourteenth Judicial District,
       In and for the County of Musselshell,
       The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Bruce E. Lee, Billings, Montana

  For Respondent:

    Karl G. Knuchel; Knuchel & McGregor, Livingston,
    Montana

---

Submitted on Briefs: June 30, 1989

Decided: July 25, 1989

Filed:

/Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The plaintiff, Robert O'Connor, brought an action based upon a contract seeking $55,000 plus interest from the defendants, J.R. Lewis, E.A. Atkinson, and Riverside Investment. Plaintiff also sought to foreclose on an alleged equitable mortgage on the MN Ranch or, in the alternative, to set aside the transfer of the MN Ranch as fraudulent upon creditors. The District Court of the Fourteenth Judicial District, Musselshell County, found in part that plaintiff held no security or equitable interest in the MN Ranch and that the transfer of the MN Ranch was not fraudulent as to creditors. Plaintiff appeals. We affirm.

The following two issues are presented for review:

1. Did the District Court err in finding that the plaintiff did not hold an equitable mortgage nor a vendor lien in the MN Ranch?

2. Did the District Court err in finding that the transfer of the MN Ranch from one defendant to another was not fraudulent as to creditors?

In 1979, J.R. Lewis, the defendant, and Robert O'Connor, the plaintiff and the half-nephew of Lewis, joined together in an effort to develop a housing project in Decker, Montana. The understanding between the two parties was that Lewis would provide the money for the project and O'Connor would draft plans, confer with public authorities, and hire and supervise contractors and laborers. Both parties also understood that any profits from the development project would be divided between them. The parties established a joint checking account in which Lewis would deposit the necessary money to fund the housing project. Initially, the

parties lived on and operated from the Murphy Ranch that Lewis was purchasing.

The housing development project eventually failed, yet O'Connor remained on the ranch and acted as a ranch hand. Lewis eventually realized that he was about to lose the Murphy Ranch and therefore instructed O'Connor to locate and purchase another ranch smaller in size in which he could move his livestock and equipment. O'Connor negotiated and ultimately purchased the MN Ranch with funds provided by Lewis. Lewis did not enter into any of the conferences or negotiations regarding the purchase of the MN Ranch. Without informing Lewis, O'Connor instructed the real estate agent to put his name on the deed to the MN Ranch. Lewis was not immediately aware of this action by O'Connor.

O'Connor eventually moved all of Lewis's livestock and equipment to the new location. Lewis was not present at the MN Ranch much of the time, either because of illness or because of his business venture in Alaska. In the meantime, O'Connor proceeded to improve the MN Ranch. He designed and arranged for the construction of fences, water and sewer lines, corrals, a shop building, a small office building, a horse barn and a house. O'Connor issued checks for these expenditures from the joint bank account funded by Lewis.

In May, 1984, Lewis and O'Connor disagreed over personal matters and the status of the MN Ranch. In an effort to resolve their disputes, Lewis and O'Connor met in the Musselshell County Courthouse on May 14, 1984 and negotiated and executed a document titled "Agreement to Settle Dispute." The Agreement provided that Lewis would pay O'Connor $20,000 at the execution of the agreement, $30,000 on or before June 5, 1984, and $25,000 at a time not expressly stated in the Agreement. In consideration for the payment, O'Connor executed and delivered to Lewis a quitclaim deed to the MN

3

Ranch. Shortly thereafter, Lewis deeded the MN Ranch to E.A. Atkinson. Atkinson, now the wife of Lewis, recorded the deed on the same day, May 14, 1984.

Lewis paid O'Connor the $20,000 at the execution of the agreement, but did not pay the remaining $55,000 as agreed upon and as specified in the "Agreement to Settle Dispute." O'Connor therefore brought an action against the defendants seeking the remaining amount due, and seeking to foreclose on an alleged equitable mortgage or vendor lien on the MN Ranch, or in the alternative to set aside the transfer of the MN Ranch from Lewis to Atkinson as fraudulent to creditors. In its March 13, 1988 judgment, the District Court ordered Lewis to pay the principal sum of $55,000 together with interest of six percent per annum from May 14, 1984 to October 1, 1985 and the rate of ten percent per annum from October 1, 1985 and until paid. The District Court also ordered Lewis to pay the costs of the suit in the amount of $1,673.20. The District Court found that O'Connor did not have an equitable mortgage in the MN Ranch nor did Lewis transfer the MN Ranch for the purpose of defrauding creditors. O'Connor appeals the District Court's findings regarding the equitable mortgage and the transfer of the MN Ranch.

The first issue raised on appeal is whether the District Court erred in finding that O'Connor did not hold an equitable mortgage nor a vendor lien in the MN Ranch.

O'Connor argues that the quitclaim deed and the "Agreement to Settle Dispute," when construed together, constitute a bungled lay attempt at creating a mortgage at law. O'Connor then argues that while the documents do not constitute a mortgage as required by the statute, § 71-1-107, MCA, they nonetheless constitute an equitable mortgage. We disagree.

4

The quitclaim deed, dated May 14, 1984, states that in consideration for the sum of ten and no/100 dollars ($10.00), Robert O'Connor conveys, remises, releases and forever quitclaims unto J.R. Lewis and to his heirs, and assigns all right, title and interest in and to the subject real estate situated in Musselshell County, Montana. The pertinent portions of the "Agreement to Settle Dispute" states that

> the parties agree to the following statement setting out the mutual promises and obligations thereto:
>
> 1. Conditioned specifically on the performance of Lewis set forth below, O'Connor shall quit claim all his right, title, and interest without warranty to the . . . [MN Ranch] located in Musselshell County, Montana . . ..
>
> This quit claim also applies to chattels and articles of personal property . . ..

The agreement further specified that Lewis shall pay O'Connor a total of $75,000, $20,000 at the execution of the agreement, $30,000 on or before June 5, 1984, and $25,000 at a time not expressly stated in the agreement. This agreement was also dated May 14, 1984.

The nature of the transaction between O'Connor and Lewis depends upon the parties' intent at the time the documents were executed. In establishing this intent, the courts first must examine both the documents and the circumstances surrounding the execution of the documents. Boysun v. Boysun (1962), 140 Mont. 85, 88, 368 P.2d 439, 440. O'Connor argues that the language "[c]onditioned specifically on the performance of Lewis set forth below, O'Connor shall quit claim all his right, title, and interest without warranty to Lewis . . .. " is a reservation by O'Connor or a grant by Lewis of security. The transaction that occurred

5

between the parties and the circumstances surrounding the transaction do not warrant such a conclusion.

The record is undisputed that O'Connor negotiated and purchased the MN Ranch in response to Lewis's request and with money provided by Lewis. The record also shows that O'Connor directed the real estate agent to put the title of the MN Ranch in his name without Lewis's permission. Lewis was thus not immediately aware of this action by O'Connor. The record also clearly shows that a disagreement arose between Lewis and O'Connor over personal matters and over the status of the MN Ranch which prompted them to execute the "Agreement to Settle Dispute."

The facts outlined above, contrary to O'Connor's assertions, do not give O'Connor a security in the MN Ranch in the form of an equitable mortgage. While this Court recognizes equitable mortgages, see, e.g., Bermes v. Sylling (1978), 179 Mont. 448, 587 P.2d 377; Amsterdam Lumber, Inc. v. Dyksterhouse (1978), 179 Mont. 133, 586 P.2d 705, the facts in this case do not warrant the application of this doctrine. An equitable lien, or equitable mortgage, will be invoked by the courts when an intended security interest proves defective. The application of this doctrine therefore prevents the lender from suffering an inequitable loss. Amsterdam Lumber, Inc., 179 Mont. at 140, 586 P.2d at 709. However, written evidence must exist which indicates that the grantor's intent was to subject the real property to a security interest in favor of a lender. Amsterdam Lumber, Inc., 179 Mont. at 140, 586 P.2d at 709.

In the present case, the undisputed facts indicate that the parties' intent behind the execution of the documents was to settle a dispute between them, hence the title of the document "Agreement to Settle Dispute." Although O'Connor agrees that this set of facts is not the typical situation in

6

which a court would invoke an equitable mortgage, he nonetheless attempts to argue that the "ideology" behind an equitable mortgage should be applied in this case. We cannot agree. The purpose behind an equitable mortgage is to prevent an inequitable outcome. In light of the documents and the surrounding circumstances, an inequity has not resulted in this case. Further, the facts do not suggest that the parties ever intended to invest a security interest in O'Connor. On the contrary, the facts indicate that neither a sale nor a mortgage was intended by the parties, but instead a contract that settled the disputes between the parties. Therefore, as the District Court correctly stated, the only question remaining is whether the "Agreement to Settle Dispute" is valid.

In determining that the Agreement was valid, the District Court found that the Agreement contained an offer, an acceptance, consideration and that neither party was incompetent nor acting under undue influence. The District Court therefore concluded that the Agreement was a binding and valid contract. The evidence clearly supports the District Court's findings and conclusions. We therefore hold that the District Court did not err in determining that a valid contract existed and that O'Connor did not hold an equitable mortgage in the MN Ranch.

Plaintiff also attempts to argue that if this Court determines that an equitable mortgage did not exist, then it should nonetheless find that an equitable lien arises by virtue of § 71-3-1301, MCA. Notwithstanding the inherent problem with O'Connor's argument--an "equitable" lien arising by virtue of a statute--O'Connor's vendor lien argument also fails for the same reason as outlined above. The transaction involved in this case involves neither a sale nor a mortgage, but merely an agreement to settle a dispute. Thus we hold

that the District Court did not err in finding that O'Connor held no security interest whatsoever in the MN Ranch.

The second issue raised on appeal is whether the District Court erred in finding that the transfer of the MN Ranch from one defendant to another was not fraudulent as to creditors.

O'Connor argues that the District Court erred when it found that the transfer of the MN Ranch from Lewis to Atkinson was not fraudulent. Specifically, O'Connor argues that the District Court erroneously relied upon § 31-2-311, MCA, instead of § 31-2-314, MCA, and therefore the District Court failed to determine whether Lewis conveyed the MN Ranch with the intent to defraud creditors.

Section 31-2-311, MCA, states that "[e]very conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration." The District Court found that O'Connor did not demonstrate that the "transfer was made for the purpose, or had the effect, of rendering the Defendant J.R. Lewis insolvent." The record clearly supports this finding. O'Connor does not dispute this finding, but instead argues that the District Court erroneously applied § 31-2-311, MCA, to this case in lieu of § 31-2-314, MCA.

Section 31-2-314, MCA, states that "[e]very conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors is fraudulent as to both present and future creditors." O'Connor then argues that the evidence indicates that Lewis had actual intent "to hinder, delay, or defraud" creditors. We disagree.

O'Connor correctly notes that actual fraudulent intent may be established by circumstantial evidence. Montana Nat'l

8

Bank v. Michels (Mont. 1981), 631 P.2d 1260, 1262-63, 38 St.Rep. 334, 337. O'Connor then relies upon the "badges of fraud," which this Court has previously applied when determining whether a conveyance is fraudulent and therefore whether it should be set aside. These "badges of fraud" include lack of consideration for the conveyance, transfer of the debtor's estate, relationship between transferor and transferee, pendency or threat of litigation, secrecy or hurried transaction, insolvency or indebtedness of the transferor, departure from the usual method of business, the retention by the debtor of possession of the property, and the reservation of benefit to the transferor. Montana Nat'l Bank, 631 P.2d at 1263, 38 St.Rep. at 337. However, we must emphasize that these "badges of fraud," if found, do not necessarily constitute fraud per se, but instead merely afford grounds of inference from which the court or jury are authorized to conclude that a transaction surrounded by them is fraudulent. Montana Nat'l Bank, 631 P.2d at 1263, 38 St.Rep. at 337 (citing Humbird v. Arnet (1935), 99 Mont. 499, 512, 44 P.2d 756, 761). Despite O'Connor's assertions that the majority of these badges are met in this case, the record supports the findings and conclusions of the District Court that Lewis did not convey the MN Ranch with the intent to defraud creditors. We therefore affirm the District Court.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

9

_William E Hunt, Jr_

_R. C. McDonough_

Justices