17 F.3d 396
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Harlie L. TEIGEN; Jane Teigen, Debtors,
Harlie L. TEIGEN; Jane Teigen; Bar 11 Ranch, Ltd.; Nathan
O. Teigen; William Harlie Teigen; Matthew Lee
Teigen, Appellants,
v.
Dennis C. HOEGER, Trustee, Appellee.
 No. 92-36674.
 United States Court of Appeals, Ninth Circuit.
 Argued and Deferred Jan. 7, 1994.
Submitted Jan. 14, 1994.
Decided Feb. 10, 1994.
Order Amending Opinion and Denying Rehearing and
Suggestion for Rehearing En Banc June 2, 1994.
 
 1
 Before: CANBY and T.G. NELSON, Circuit Judges, and SHUBB,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Harlie and Jane Teigen, the debtors (Teigens), appeal the decision of the Bankruptcy Appellate Panel (BAP) affirming an order of the United States Bankruptcy Court, District of Montana (bankruptcy court). We must determine the threshold issue of whether to retain jurisdiction because the underlying bankruptcy case was dismissed pending this appeal. We retain jurisdiction and affirm.
 
 A. JURISDICTION
 
 4
 "[B]ankruptcy courts are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case is dismissed." In re Carraher, 971 F.2d 327, 328 (9th Cir.1992); see also In re Morris, 950 F.2d 1531, 1534 (11th Cir.1992) (same); In re Smith, 866 F.2d 576, 580 (3d Cir.1989) (same). Rather, we consider several factors in determining whether to dismiss a related case, including judicial economy, convenience and fairness to the parties, and comity. In re Carraher, 971 F.2d at 328; see also In re Smith, 866 F.2d at 580. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate." In re Fietz, 852 F.2d 455, 457 (9th Cir.1988) (adopting the Third Circuit's definition of related cases in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)).
 
 
 5
 In these cases, the bankruptcy or district court retained jurisdiction over a related case after the underlying bankruptcy case was dismissed. The appellate court was then in the position to determine whether the lower court abused its discretion in retaining jurisdiction. Although the present case is unique in that it is the appellate court that must decide whether to retain jurisdiction rather than a lower court making that determination, we conclude that the reasoning contained in the above-cited cases applies with equal force to this situation. The bankruptcy court at the time of dismissal indicated that it was up to this court, and not the bankruptcy court, to determine whether the fraudulent transfer rulings, then on appeal, were preserved despite the dismissal of the bankruptcy proceeding. See 111 U.S.C. Sec. 349 (b). We interpret that statement as a ruling that the dismissal is not to vacate the fraudulent transfer rulings unless this court determines that they should be vacated. Therefore, both courts clearly had jurisdiction to render final decisions.
 
 
 6
 Drawing on this analogous case law, we conclude that fairness to the parties and judicial economy weigh in favor of review. The bankruptcy court awarded a reasonable attorney's fee in the amount of $70,666.77 to the Trustee's attorney and conditioned the award upon the bankruptcy case being affirmed. It would be unfair and a waste of judicial resources if the Trustee were required to seek resolution of the fraudulent conveyance issue in state court when it has already been resolved as a related case in the bankruptcy proceeding. See In re Smith, 866 F.2d at 580 (remanding related case to state court after underlying bankruptcy case dismissed would be unfair to parties who would bear cost of retrial; would serve no useful purpose; and would waste unnecessary resources and time already invested in case).
 
 B. FRAUDULENT CONVEYANCE
 
 7
 A bankruptcy trustee has power to avoid fraudulent transfers under the Bankruptcy Code and/or pursuant to state law. See 11 U.S.C. Secs. 544(b), 548; In re United Energy Corp., 944 F.2d 589, 593 (9th Cir.1991). In this case, Montana law provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors." Mont.Code Ann. Sec. 32-2-314.[1]
 
 
 8
 Fraudulent intent need not be proved by direct evidence but may be established by circumstantial evidence. Montana Nat. Bank v. Michels, 631 P.2d 1260, 1262-63 (Mont.1981). In determining whether a conveyance is fraudulent, Montana courts consider various "badges of fraud." O'Connor v. Lewis, 776 P.2d 1228, 1232-33 (Mont.1989). Whether fraudulent intent actually exists depends upon the circumstances of any given case. See Michels, 631 P.2d at 1263. "Often a single [badge of fraud] may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent." Id. (internal quotations omitted).
 
 
 9
 The pending threat of the FLB foreclosure and a deficiency judgment; the fact that the Teigens retained possession and the benefit of the property conveyed; and the fact that Bar Eleven did not receive consideration for the 160-acre tract are all "badges of fraud" which support the bankruptcy court's conclusion. See O'Connor, 776 P.2d at 1233. Further, the Teigens have failed to establish that the factual findings upon which the bankruptcy court relied are clearly erroneous. See In re Dewalt, 961 F.2d 848, 850 (9th Cir.1992). Nor have they shown sufficient strong, clear evidence to overcome the bankruptcy court's conclusion that the conveyance was fraudulent in light of the circumstances surrounding the conveyance. See Michels, 631 P.2d at 1263. Accordingly, we uphold the bankruptcy court's decision avoiding the conveyance as fraudulent.
 
 
 10
 The Teigens argue that the conveyance was not fraudulent because they were paid fair consideration for the conveyance in the form of 5,932 shares of Bar Eleven stock. We reject this argument. First, the bankruptcy court rejected the Teigens' claim that they were paid fair consideration for the transfer and they have not shown that this factual finding is clearly erroneous. Second, the Teigens continued to use the property in their livestock operation without making rental payments to the corporation. Their Chapter 12 bankruptcy plan also contemplated the continued free use of that property. Finally, there was a reconveyance of the property from Bar Eleven to the Teigens which resulted in an adjustment in the stock they held from 5,932 to 2,000 shares. Bar Eleven's reconveyance of the property allowed the Teigens to file a homestead declaration on that property because, under Montana law, a corporation is not eligible to file a homestead declaration. See Mont.Code Ann. Sec. 70-32-103. This transaction precluded FLB from obtaining most of the stock and that part of the property subject to the homestead. Moreover, Bar Eleven transferred 160 acres to the Teigens' son without consideration. This conveyance prevented that tract of land, or any proceeds derived therefrom, from being included within the Teigens' bankruptcy estate.
 
 
 11
 Next, the Teigens contend that because the transfer did not defeat "legal process" under Mont.Code Ann. Sec. 31-2-323, it was not avoidable. We disagree. The Teigens' actions "obstructed the enforcement of legal process" by hindering the ability of creditors to enforce their rights against the Teigens. See Edenfield v. C.V. Seal Co., 270 P. 642, 646 (Mont.1928) (debtor's transfer of property to corporation obstructs creditor's right to obtain property by legal process).
 
 C. RENUNCIATION OF INHERITANCE
 
 12
 The Teigens claim that the bankruptcy court erred in determining that Harlie Teigen's attempted renunciation of a property inheritance from his father was ineffective under Montana law. This final issue need not detain us. Indeed, we are somewhat puzzled as to why the Teigens raise this issue. They concede that the renunciation was barred, albeit not under Sec. 72-2-101(5)(a)(iii) as an acceptance, but rather under Sec. 72-2-101(5)(a)(i) which provides that a renunciation is barred by "an assignment, conveyance, encumbrance, pledge, or transfer of property or interest, or a contract therefor...." Because they concede the outcome, this issue warrants no further discussion.[2]
 
 
 13
 AFFIRMED.
 
 ORDER
 June 2, 1994
 
 14
 With this amendment, the panel has voted to deny Appellant's petition for rehearing. Judge Canby and Judge Nelson vote to reject the suggestion for rehearing en banc, and Judge Shubb so recommends.
 
 
 15
 The petition for rehearing and suggestion for rehearing en banc were circulated to the full court and no timely request for en banc rehearing was made by any active judge.
 
 
 16
 The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.
 
 
 
 *
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In 1991, the Montana Legislature repealed the Uniform Fraudulent Conveyance Act (UFCA) and enacted the Uniform Fraudulent Transfer Act (UFTA). Section 32-2-314 was part of the UFCA. The analogous UFTA provision is Sec. 31-2-333. However, because the UFCA was in effect at the time of the transfer at issue here (1988), we apply Sec. 32-2-314. See McDonald v. Anderson, 8562 P.2d 402, 405 (Mont.1993) (Montana Supreme Court declined to apply UFTA retroactively, and thus applied UFCA as it was the law in effect at time of conveyance at issue)
 
 
 [2]
 We note that the bankruptcy court properly found that the renunciation was also barred because Harlie Teigen accepted the property. "The right to renounce property or an interest therein is barred by ... an acceptance of the property or interest or benefit thereunder...." Mont.Code Ann. Sec. 72-2-101(5)(a)(iii). The bankruptcy court found that Harlie Teigen used and obtained all the benefits of the property without paying rent to the estate or to other estate heirs. Consequently, because he enjoyed all the benefits of the property without paying for its use, he "accepted" it within the meaning of Sec. 72-2-101(5)(a)(iii), and was barred from renouncing it