JUSTICE NELSON
delivered the Opinion of the Court.
The plaintiff, William Lee Jones (Jones), brought this action to attach the proceeds from the sale of certain real property by defendant, Janise Ament Arnold. Following a bench trial, the District Court for the Fourth Judicial District, Missoula County, entered judgment *321 for plaintiff and ordered execution on the proceeds from the sale of the property at issue. The court also concluded that punitive damages were appropriate, subject to a later hearing to determine the amount. From that judgment, defendants appeal. We reverse.
We address the following issues on appeal:
1. Did the District Court err in determining that the series of conveyances of the subject property were fraudulent under § 31-2-314, MCA (1989)?
2. Did the District Court err by failing to determine that the judgment lien was extinguished by operation of law, thus terminating any rights the plaintiff may have to the subject property?
On March 10, 1986, Jones obtained a judgment, against Gary Arnold (Arnold), individually, in the Fourth Judicial District Court, Missoula County. On February 10,1989, Arnold and his wife, Janise Ament Arnold (Ament-Arnold), purchased real property, secured by a trust indenture, from the executors of an estate, Charles and Gladys Hall and Vere Sipes, for $11,883. Under the terms of the sale, Arnold and Ament-Arnold paid $2,000 down, with the remainder due in May of 1989.
Shortly after entering into this agreement, Arnold learned of Jones’ March 10,1986, judgment against him. Unable to borrow money due to this judgment, Arnold and Ament-Arnold quit-claimed the property back to the sellers on April 10, 1989. The property was then purchased by Ament-Arnold’s step-father, James Clark (Clark).
On May 10,1989, Clark executed a quit-claim deed for the property to Ament-Arnold. The deed was made outto “Janise Ament, amarried woman in her own right....” The deed was not recorded until October 3,1990.
On December 12,1990, Ament-Arnold sold the property to Robert and May Hayes (Hayes) under a contract for deed for $38,500. Under the terms of the sale, payments are deposited into an account bearing the name “Janise Arnold.” This is an individual account and not a joint account with her husband.
Jones filed an action on February 15, 1991, seeking to attach the proceeds from the sale to Hayes on the basis that the series of transactions concerning the purchase and sale of the property were fraudulent. Subsequently, on March 10, 1992, Jones filed a motion to renew his judgment. The court granted the motion on March 23,1992, and entered an order renewing the judgment for an additional 6 years.
A bench trial was held on April 12, 1994. The District Court accepted the Agreed Facts as presented in the Pretrial Order, heard *322 testimony and admitted documentary exhibits. Defendants’ motion for a directed verdict was denied.
The District Court entered its Amended Findings of Fact and Conclusions of Law and Judgment on July 6, 1994. The court found that this “series of transfers ... had the effect of removing Gary Arnold from the title,” thereby preventing “execution against the property by Jones ... while the Arnolds retained the ultimate benefit of the transaction.” The court concluded that the series of conveyances were fraudulent, in violation of § 31-2-314, MCA (1989), that Ament-Arnold participated in the fraud, and that actual malice was present.
The court ordered execution on the proceeds from the sale of the property from Ament-Arnold to Hayes and awarded Jones his costs of suit. The court also ordered a subsequent proceeding pursuant to § 27-1-221(7), MCA, to determine punitive damages. The proceeding to determine punitive damages is pending determination of this appeal. Defendants appeal the judgment and the denial of a directed verdict.
The Uniform Fraudulent Conveyance Act (UFCA) was the substantive law in effect in 1989 when the series of transactions at issue took place. The Montana Legislature repealed the UFCAin 1991 and enacted the Uniform Fraudulent Transfer Act (UFTA). Since the UFTA does not expressly state that it is retroactive, we will apply the UFCA, which was the law in effect at the time of the conveyances at issue. McDonald v. Anderson (1993), 261 Mont. 268, 272-73, 862 P.2d 402, 405.
Issue 1
Did the District Court err in determining that the series of conveyances of the subject property were fraudulent under § 31-2-314, MCA (1989)?
The District Court found that the series of conveyances at issue here contained several “badges of fraud” from which the court inferred a “fraudulent intent” in violation of § 31-2-314, MCA (1989). Section 31-2-314, MCA (1989), provides:
Conveyance made with intent to defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors.
This Court will affirm the findings of a trial court sitting without a jury unless the findings are clearly erroneous. Rule 52(a), *323 M.R.Civ.R; Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287.
In DeSaye, this Court adopted a three-part test to determine if a finding is clearly erroneous. The test provides that: (1) the Court will review the record to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, the Court will determine if the trial court has misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that a finding is clearly erroneous although there is evidence to support it, if a review of the record leaves the Court with the definite and firm conviction that a mistake has been made. DeSaye, 820 P.2d at 1287.
In applying the DeSaye test to the case before us on appeal, we first review the record to see if the findings are supported by substantial evidence. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a scintilla of evidence and may be less than a preponderance of evidence. Yellowstone Basin Properties v. Burgess (1992), 255 Mont. 341, 346, 843 P.2d 341, 344.
The only evidence presented by Jones at trial to support his contention that these conveyances are fraudulent were the deeds for each transfer of the property. There was no evidence presented that would indicate that the transfers were made with actual intent to hinder, delay or defraud Jones as a judgment creditor as prescribed by § 31-2-314, MCA (1989).
The uncontroverted evidence presented at trial showed that Arnold and Ament-Arnold purchased the subject property secured by a trust indenture in February 1989. Under the terms of the agreement, they paid $2,000 down against the total purchase price of $11,883 and were required to pay the remaining $9,883 in May 1989. Unable to secure adequate financing for the May payment due to Jones’ March 10, 1986, judgment lien, they transferred the property back to the original owners rather than be subjected to foreclosure proceedings. Ament-Arnold testified that they lost their original $2,000 investment in the property.
The presumption that private transactions are fair and regular is conclusive unless controverted by other evidence. Lawrence v. Clepper (1993), 263 Mont. 45, 56, 865 P.2d 1150, 1158. Jones presented no evidence at trial to indicate that this conveyance back to *324 the original sellers was made with an intent to defraud him or prevent him from executing on the judgment lien.
Neither did he present any evidence that would indicate that the subsequent purchase of the property by Ament-Arnold’s step-father and the later transfer of the property to Ament-Arnold was done with an intent to defraud Jones and prevent him from executing on the judgment lien. The uncontroverted evidence at trial showed that Clark deeded the property to Ament-Arnold without her or her husband’s knowledge. In order to be a fraudulent conveyance, the transfer must be at the hands of the debtor. Beard v. Myers (1959), 136 Mont. 350, 352-53, 347 P.2d 719, 720.
The District Court relied on Montana Nat. Bank v. Michels (1981), 193 Mont. 295, 631 P.2d 1260, to support its findings that the series of transactions at issue contained “badges of fraud” from which the court inferred a fraudulent intent. In Michels, a husband conveyed all of his property to his wife in consideration of the sum of one dollar even though the fair market value of the property was more than $40,000. Michels, 631 P.2d at 1261. Two months later, the wife conveyed the property to the husband’s uncle. The consideration for this conveyance included payment of numerous creditors of the husband, none of which was owed by the wife. Michels, 631 P.2d at 1262. In addition, after this conveyance, both husband and wife retained possession of the property and continued to live on it without paying any rent. Michels, 631 P.2d at 1264.
Although the District Court found that the series of conveyances in the case before us on appeal contained “badges of fraud” similar to those in Michels, the instant case is distinguishable from Michels in several respects. Unlike the judgment debtor in Michels, where the husband conveyed the property to his wife for one dollar, Arnold did not convey property to his wife. Evidence at trial showed that when Arnold and Ament-Arnold learned of the judgment lien they transferred the property back to the original owners because they were unable to secure financing to pay the obligation secured by the trust indenture. In addition, while in Michels part of the consideration of the sale to the debtor’s uncle included paying many of the judgment debtor’s creditors, there was no evidence presented in the instant case to show that Arnold received any funds from the subsequent sale of the property by Ament-Arnold to Hayes. Finally, while the debtor in Michels continued to live on the property without paying rent, there was no evidence presented in the instant case to show that Arnold *325 retained any possession or control over the property or the proceeds from the sale of the property.
It remained Jones’ burden to prove that the transactions at issue were fraudulent, but there was simply not enough evidence in the record to support a conclusion that he had borne his burden of proof. Applying our test from DeSaye, we conclude that the evidence in the record was not sufficient to support the District Court’s findings that the series of transactions at issue were fraudulent. Accordingly, we hold that the District Court’s findings were clearly erroneous and we reverse the decision of the District Court in that respect.
Issue 2
Did the District Court err by failing to determine that the judgment lien was extinguished by operation of law, thus terminating any rights the plaintiff may have to the subject property?
In order to resolve this issue, it is necessary to keep in mind that there is a difference between a judgment and the lien on real property that is created when a judgment is docketed (judgment lien). Moreover, it is also important to acknowledge that Montana’s statutes provide for distinct times during which a judgment may be enforced, during which an execution on a judgment may be issued, and during which a judgment lien encumbers real property. Finally, one must also appreciate that the ability to execute on a judgment is distinct from whatever additional advantages that a judgment creditor may acquire by virtue of his judgment creating a lien on real property. We will discuss these various legal principles in the context of the facts of this case and the District Court’s decision.
To summarize the following discussion, Montana law provides in separate statutes that a judgment may be enforced for a period of 10 years from docketing, § 27-2-201(1), MCA; that a writ of execution may be issued to enforce a judgment for a period of 6 years from entry, § 25-13-101, MCA, which period may be extended by the court for up to an additional 4 years, § 25-13-102, MCA, and Welch v. Huber (1993), 262 Mont. 114, 862 P.2d 1180; that a judgment lien continues for 6 years following docketing of the judgment and then expires by operation of law, § 25-9-301(2), MCA; and that a judgment may be extended past its 10 year duration only by filing a separate action to obtain a judgment on the judgment, § 27-2-201(1), MCA, and Welch, 862 P.2d at 1181.
In this case, the District Court stated in its findings of fact that Jones’ March 10, 1986, judgment had been “renewed for an *326 additional six year period beginning March 23, 1992.” This finding stems from Jones’ motion to renew the judgment filed on March 10, 1992, which the District Court granted by order on March 23, 1992. Our review of the District Court’s conclusions of law is plenary. We simply determine whether the trial judge’s interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. We conclude that the court’s finding that the judgment, and, implicitly, its legal conclusion that the judgment lien was “renewed” are incorrect.
Under Montana law, liens are creatures of statute. Matter of Estate of Wilhelm (1988), 233 Mont. 255, 262, 760 P.2d 718, 723. With respect to liens created by entry of judgment, the applicable statute provides:
From the time the judgment is docketed, it becomes a lien upon all real property of the judgment debtor not exempt from execution in the county, owned by the judgment debtor at the time or which the judgment debtor may afterward acquire until the lien ceases.
Section 25-9-301(2), MCA. Moreover, the judgment lien so created continues for 6 years unless the judgment is previously satisfied. Section 25-9-301(2), MCA.
Jones’judgment lien sprang into existence and attached to any and all real property, not exempt from execution, owned by Arnold in Missoula County as of March 10, 1986, the date his judgment against Arnold was docketed. That lien continued to exist until it expired by operation of § 25-9-301(2), MCA, 6 years from and after March 10,1986. Moreover, under § 25-9-301(2), MCA, that judgment lien attached to the real property which is the subject of this case when Arnold and his wife purchased the property on February 10, 1989. However, a judgment lien can only attach to the actual interest of the judgment debtor and is subject to all prior liens, whether equitable or legal. Hannah v. Martinson (1988), 232 Mont. 469, 472, 758 P.2d 276, 278-79.
Section 25-13-101(1), MCA, provides that “the party in whose favor the judgment is given may, at any time within 6 years after the entry thereof, have a writ of execution issued for its enforcement.” Accordingly, Jones could have executed on Arnold’s interest in the subject property, during the 6 years from and after March 10, 1986. Section 25-13-101(1), MCA. Furthermore, during the 6-year period that the judgment was a lien, Jones’ ability to execute on Arnold’s interest in the subject real property was not impaired by the subsequent transfers since the lien follows the property. Furthermore, *327 any judgment or decree of any court of this state affecting real property is deemed to impart notice to subsequent purchasers or encumbrancers. Section 25-9-105, MCA. Once a judgment lien expires by operation of § 25-9-301(2), MCA, however, there is no statutory provision which allows the lien to continue past the original 6 years provided by § 25-9-301(2), MCA, or allows it to be “renewed.” In other words, on March 10,1992, Jones’judgment lien on the subject real property terminated and the property thereafter existed free of the judgment lien.
While the judgment lien expired, that is not to say, however, that the judgment itself could not be enforced following the expiration of the lien. Section 25-13-102, MCA, provides:
In all cases, the judgment may be enforced or carried into execution after the lapse of 6 years from the date of its entry by leave of the court, upon motion, or by judgment for that purpose founded upon supplemental pleadings.
Accordingly, Jones’judgment lien on the subject real property terminated by operation of law on the expiration of 6 years from March 10, 1986. The March 10, 1986, judgment continued to exist, however. Thereafter, if Jones desired to execute on that judgment, it was incumbent upon him to obtain a new execution upon motion by leave of court or by judgment for that purpose founded upon supplemental pleadings, in accordance with § 25-13-102, MCA.
' In that respect, and assuming that the procedure set forth in § 25-13-102, MCA, is followed, our recent decision in Welch v. Huber (1993), 262 Mont. 114, 862 P.2d 1180, comes into play. In that case we held that while the time to execute on a judgment could be extended beyond the original 6 years, that time could not be extended beyond the 10 years provided for actions on judgments under § 27-2-201(1), MCA. Welch, 862 P.2d at 1181. Applying those legal principles here, while Jones could obtain an execution on the March 10, 1986, judgment following the expiration of the 6-year execution period, pursuant to § 25-13-102, MCA, his ability to obtain such further execution was limited to an additional 4 years.
Importantly, and contrary to the District Court’s March 23, 1992, order, the original March 10,1986, judgment was not “renewed.” That judgment continued to exist; the judgment lien, however, terminated permanently on the expiration of 6 years from March 10, 1986, and that lien was not “renewed” under the court’s March 23,1992, order.
Moreover, the District Court’s finding that the judgment was renewed for “an additional six year period beginning March 23,1992,” *328 is also incorrect. In Welch we held that while a judgment cannot be extended past 10 years by ex parte motion, nevertheless, a judgment creditor may file an action to extend a district court’s judgment beyond its initial 10-year duration. Welch, 862 P.2d at 1181. In other words, enforcement of a judgment is barred by § 27-2-201(1), MCA, after the judgment’s 10-year duration has expired. Welch, 862 P.2d at 1181. If before that 10-year duration expires the judgment creditor desires to extend the judgment past 10 years, then he must file a separate action on the existing judgment and obtain a new judgment. Section 27-2-201(1), MCA; Welch, 862 P.2d at 1181. From the date that the new judgment on the original judgment is docketed, then it also follows that anew 6 year judgment hen commences to run (§ 25-9-301(2), MCA), and that the provisions of § 25-13-101(1), MCA, § 25-13-102, MCA, and § 27-2-201(1), MCA, would apply, as discussed above.
Accordingly, we hold that the District Comb erred by failing to determine that Jones’ judgment hen was extinguished by operation of § 25-9-301(2), MCA, on the expiration of 6 years from March 10,1986.
Reversed.
JUSTICES GRAY, HUNT, TRIEWEILER and LEAPHART concur.