Rick Lee TURK, Plaintiff

v.

INTERNAL REVENUE SERVICE,
Defendant.

No. CV 97–95–BU–DWM.

United States District Court,
D. Montana.

Oct. 19, 2000.

## ORDER

MOLLOY, District Judge.

### Background

This is a wrongful levy action under 26 U.S.C. § 7426. Plaintiff Rick Turk ("Rick") is the son of taxpayer Richard Turk ("Richard"). In 1983, Richard Turk was convicted of failing to file an income tax return in the years 1978, 1979, and 1980. He served nine months in prison.

On January 23, 1989, still wrangling with Richard over his late–1970's tax returns, the IRS sent a notice of deficiency to Richard. That notice covered the years 1976 through 1980. Richard petitioned the Tax Court for relief sometime during 1989.

On December 3, 1989, Richard conveyed to his son Rick a piece of property referred to in this litigation as "the Granite property." It is located in Butte–Silverbow. On June 14, 1990, a contract for deed on the Granite property was paid off, and the seller, Thomas Heintz, recorded a 1976 deed conveying the property to Richard. On the same day, Richard and Rick recorded the December 1989 deed conveying the property to Rick. Rick testified at the October 3, 1997, hearing on the IRS's motion to dismiss that he worked for his father from the time he was sixteen until his father deeded the property to him, when he was twenty. *See* Tr. at 12–13, 15–17. Rick also testified, albeit somewhat ambiguously, that he has paid the property taxes with his own funds or with money borrowed from his mother (Tr. at 20–21) and that his father does not live with his mother because the two are divorced (Tr. at 23–24). No one, apparently, lives on the Granite property.

The IRS calculates Richard's total tax liability, as of September 1991, at $69,609.69, including penalties and interest. *See* Def. Ex. D. The IRS values Richard's assets, as of 1997, at $52,058.50. Rick proffers the Tax Court's calculation of Richard's tax liability in 1991, $21,870. Rick values Richard's assets in 1991 at $64,998; since Richard was married at the time, his half-share would have been $35,744.

Neither party offers figures on Richard's tax liability and assets as of December 3, 1989, or June 14, 1990.

The IRS set a sale date for the property on or for September 25, 1997. Rick obtained a TRO preventing the sale of the property on or about that date, commencing the present action.

### Analysis

*A. Burden of Proof*

■ The burden of proof in a wrongful levy case shifts back and forth between Plaintiff and Defendant. Initially, the Plaintiff must prove by a preponderance of the evidence that he has an interest in the property on which the IRS seeks to levy. Rick's deed is sufficient to prove his interest. *See Newnham v. United States*, 813 F.2d 1384 (9th Cir.1987).

■ The burden then shifts to the IRS to prove a nexus between the taxpayer, Richard, and the property on which it seeks to levy. *See, e.g., Morris v. United States*, 813 F.2d 343 (11th Cir.1987). This nexus must be proven by "substantial evidence." The Ninth Circuit defines "substantial evidence" to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Supreme Court also recently described review under the "substantial evidence" standard as questioning whether "on this record it would have been possible for a reasonable jury to reach [the Court's] conclusion." *Allentown Mack Sales and Serv., Inc. v. NLRB*, 522 U.S. 359, 366–67, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998). Thus, the standard of review is somewhat deferential.

If the IRS shows a nexus between the taxpayer and the property, then the burden shifts once again to the Plaintiff, who

must show that the levy is wrongful. He might do this by, for example, showing that his interest is senior to the IRS's, or that he was a bona-fide purchaser. Rick cannot show either of these things. He knew of his father's tax difficulties, and his interest did not attach to the property until December of 1989, several years after his father's tax problems began. On the record before me, no other obstacles to the levy are readily apparent. *Compare Nelson v. United States*, 821 F.Supp. 1496, 1501 (M.D.Ga.1993) (finding levy wrongful, even assuming IRS had proven nexus, because IRS seized home where plaintiff lived with her child and seizure would render plaintiff homeless; note, however, that, regarding nexus, court required from IRS "more than a preponderance but less than clear and convincing proof," *id.* at 1501).

Thus, the cross-motions for summary judgment depend on the resolution of two issues. First, has the IRS established by substantial evidence a nexus between the property and the taxpayer? If not, does its failure to do so indicate that there are outstanding questions of material fact, or has it failed to produce evidence sufficient to resist summary judgment in Rick's favor?

*B. Nexus*

The IRS advances two theories concerning the nexus. First, it argues that Rick is Richard's nominee, so that there is no legal distinction between the two. Second, it argues that Richard, actually or constructively,[1] conveyed the property to Rick with the intention of defrauding his creditors. If the IRS can establish these theories or can establish a sufficient nexus from all the facts of the case in order to prevail on the nexus issue, it would prevail in the case.

*1. Nominee Theory*

■ A nominee is "[a] party who holds bare legal title for the benefit of others or

who receives and distributes funds for the benefit of others." Black's Law Dictionary 1072 (7th ed.1999). In the context of a wrongful levy case, a nominee is essentially a proxy, or even a decoy, for someone else. *See, e.g., United States v. Nelson,* 729 F.2d 1340 (11th Cir.1984) (mother was nominee of taxpayer son because she purchased home in which son and his family lived and because she testified that any sale proceeds remaining after mortgage was satisfied would go to her son).

■ State law governs the question whether Rick is the nominee of Richard. The only Montana test for nominee status comes from a decision by Judge Battin, *Towe Antique Ford Found. v. IRS*, 791 F.Supp. 1450 (D.Mont.1992). Based on a survey of opinions from other jurisdictions, Judge Battin considered the following factors were pertinent to determine whether one person or entity is the nominee of another:

(a) No consideration or inadequate consideration paid by the nominee;

(b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;

(c) Close relationship between transferor and the nominee;

(d) Failure to record the conveyance;

(e) Retention of possession by the transferor;

(f) Continued enjoyment by the transferor of benefits of the transferred property.

*See id.* at 1454 (citing cases).

These are factors to consider. No factor can dispose of the issue by itself, and no factor is necessarily required in order to find nominee status.

---

1. If Richard continued to enjoy the property after its conveyance to Rick, then the conveyance might be actually fraudulent. If the transfer rendered him insolvent but he did not continue to enjoy the property, then the conveyance might be constructively fraudulent.

Because no one factor is conclusive, a close relationship between grantor and grantee does not necessarily make the grantee the grantor's nominee. Yet this is what the IRS seeks to establish. The IRS opines that the services Rick says he rendered his father cannot be construed as adequate consideration. Because the conveyance was not recorded until six months after its occurrence, when Richard came into possession upon full execution of the contract for deed, the IRS opines that Rick "failed" to record the conveyance. Most tellingly, because Richard and Rick are father and son, the IRS opines that "the family" continued to exercise control over the property, retained possession, and continued to enjoy its benefits.

The IRS has not provided factual support for these interpretations of the evidence. It has allowed category (c), a close relationship between Richard and Rick, to swallow each of the other categories. This is not a reliable analysis.

■ Rick has produced evidence that he paid for the Granite property by rendering services to his father, that Richard did not pay the property taxes, that Richard did not live on the property (except for an occasional visit), and that he and his mother, who is no longer married to Richard, have exercised exclusive control over the property since its conveyance to Rick. These facts are sufficient to defeat the IRS's motion for summary judgment on a nominee theory of the nexus between the taxpayer and the subject property. Because they are not refuted by the IRS, they are also sufficient to entitle Rick to summary judgment on the nominee theory. The IRS may not raise that theory at trial.

### 2. Fraudulent Conveyance Theory

■ Under this theory, too, the Court looks to state law to determine whether Richard's conveyance to Rick was fraudulent. The Uniform Fraudulent Conveyance Act was the law in effect in 1989, at the time of this transfer.

### a. Actual Fraudulent Intent

Montana courts refer to "badges of fraud" which may indicate that a transaction was undertaken with actual fraudulent intent. " 'Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent.' " *Montana Nat'l Bank v. Michels,* 193 Mont. 295, 300, 631 P.2d 1260, 1263 (Mont.1981) (quoting *Humbird v. Arnet,* 99 Mont. 499, 44 P.2d 756, 761 (Mont.1935)). The "badges of fraud" are similar to the factors constituting the test for nominee status. They are:

(a) Lack of consideration;

(b) Transfer of the debtor's entire estate;

(c) Relationship between the transferor and transferee;

(d) Pendency or threat of litigation;

(e) Secrecy or hurriedness of the transferor;

(f) Insolvency or indebtedness of the transferor;

(g) Departure from the usual method of business;

(h) Retention by the debtor of possession of the transferred property;

(i) Reservation of benefit to the transferor.

*Towe Antique Ford Found.,* 791 F.Supp. at 1458.

Although factors (c), (d), and (f) militate in the IRS's favor, there is not enough evidence on the record before me to determine whether Richard Turk actually intended to defraud the IRS by transferring property to his son or whether he simply undertook to reward his son for work, to make a gift, or to ensure that his son would have a place to live. Factors (b), (e), (g), (h), and (i) are either wholly absent from this record or do not clearly tend to support either party's position. The IRS has not presented uncontroverted proof of actual fraudulent intent by substantial evi-

dence, nor has Rick disproved it by uncontroverted proof.

### b. *Statutory or Constructive Fraud*

Alternatively, a conveyance may be fraudulent if (1) it is made "without a fair consideration," and (2) it is "made ... by a person who is or will be thereby rendered insolvent." Mont.Code Ann. § 31–2–311 (1989).

■ A conveyance cannot become fraudulent at some point after its occurrence. It must be either fraudulent or non-fraudulent when executed. *See O'Connor v. Lewis,* 238 Mont. 270, 274, 776 P.2d 1228, 1231 (Mont.1989).

■ On this issue, there is a question of material fact whether Richard's liabilities exceeded his assets at the time he conveyed the Granite property to Rick. Neither party has produced figures that pertain to the dates in question, December 3, 1989, and June 14, 1990. Thus, Richard's insolvency has not been established by the IRS by substantial evidence or refuted by Rick. Without more proof of the actual value of Richard's assets and the extent of his liabilities at the time the conveyance was executed, any finding on fraudulent transfer would be speculative.

Accordingly, IT IS HEREBY ORDERED that:

- Defendant's motion for summary judgment (dkt # 20) is DENIED;
- Plaintiff's motion for summary judgment (dkt # 22) is GRANTED as to the nominee theory and DENIED as to the fraudulent conveyance theory;
- A telephonic scheduling conference to establish a date for bench trial on the merits of the requested injunction is set for November 3, 2000, at 9:00 a.m. MST. Counsel shall advise chambers of a number where they can be reached.