ARTHUR DALTON, JR. AND BEVERLY DALTON, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT *

Docket No. 23510–06L.     Filed September 23, 2010.

R seeks to collect certain trust fund recovery penalties from Ps. In R's determination pursuant to sec. 6330, I.R.C., R rejected Ps' offer-in-compromise. Ps transferred property to P husband's father F, who in turn transferred the property to a trust 11 years before trust fund recovery penalties arose. The trust was set up to hold the property for the benefit of F's grandsons; i.e., Ps' children. R determined that Ps retained a beneficial interest in the trust property under a nominee ownership theory and, therefore, rejected Ps' offer-in-compromise. Ps contend that R's determination was an abuse of discretion because Ps did not retain a nominee interest in the trust property after the trust was created and, therefore, need not include the trust property in Ps' assets for purposes of the offer-in-compromise. In our prior opinion, we remanded this case to R's Appeals Office to consider State law as well as a Federal factors analysis regarding whether Ps had a nominee interest in the trust property. *Held*: This Court has jurisdiction to decide whether R abused his discretion in rejecting Ps' offer-in-compromise because of Ps' alleged nominee interest in the trust property. *Held*, *further*, Ps do not have a nominee interest in the trust property under State law. *Held*, *further*, Ps do not have a nominee interest in the trust property under a Federal factors analysis. *Held*, *further*, it was an abuse of discretion for R to reject Ps' offer-in-compromise on the basis that the offer-in-compromise did not include in Ps' assets a nominee interest in the trust property.

*Ralph A. Dyer*, for petitioners.
*Michael R. Fiore* and *Erika B. Cormier*, for respondent.

───────────
* This Opinion supplements *Dalton v. Commissioner*, T.C. Memo. 2008–165.

SUPPLEMENTAL OPINION

WELLS, *Judge*: This case is before the Court on petitioners' motion for summary judgment pursuant to Rule 121.[1] Respondent filed a response to petitioners' motion for summary judgment and subsequently filed a second motion for summary judgment.[2] The instant proceeding arises from a petition filed in response to Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 issued separately to each petitioner. The issues to be decided are: (1) Whether we have jurisdiction to decide the instant matter; and (2) if so, whether respondent abused his discretion in sustaining the levy action against petitioners.

## *Background*

The facts set forth below are based upon examination of the pleadings, moving papers, responses, and attachments filed in the instant case. The facts are set forth in our prior opinion in the instant case, *Dalton v. Commissioner*, T.C. Memo. 2008–165 (prior opinion), and are incorporated by reference.

Petitioners Arthur Dalton, Jr. (Mr. Dalton Jr.), and Beverly Dalton (Mrs. Dalton Jr.) are husband and wife who resided in Maine at the time of filing the petition. The instant case centers on three parcels of real property located near Johnson Hill Road in Poland, Maine (hereinafter referred to individually as lot 3, lot 4, and lot 5, respectively, and collectively as the Poland property).

### *Acquisition of Lots 3, 4, and 5*

By deed dated November 25, 1977, petitioners purchased lot 4, and the deed to lot 4 was recorded with the appropriate county registry on November 28, 1977. Similarly, by deed dated November 24, 1980, petitioners purchased lot 3, and the deed to lot 3 was recorded on December 1, 1980. In connection with the latter transaction petitioners obtained a bank loan secured by a mortgage on lot 3 which was recorded on December 1, 1980.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] On July 6, 2007, respondent filed his original motion for summary judgment. Respondent's motion was denied on July 8, 2008.

By deed dated January 13, 1983, petitioners conveyed lot 3 and lot 4 to Mr. Dalton Jr.'s father, Arthur Dalton, Sr. (Mr. Dalton Sr.), for consideration of $1 and subject to the existing mortgage.[3] Petitioners and Mr. Dalton Sr. executed a notarized assignment and assumption agreement dated April 1, 1983, reflecting the foregoing transaction and Mr. Dalton Sr.'s assumption of the existing mortgage. The underlying deed was recorded on May 2, 1983, and the assignment and assumption agreement was recorded on August 16, 1985. On February 13, 1983, petitioners filed a declaration of Maine real estate transfer tax for the transfer of lots 3 and 4 to Mr. Dalton Sr.[4]

Mr. Dalton Sr. acquired lot 5 by deed dated September 24, 1984, and executed a mortgage in favor of the seller. The deed and mortgage were recorded on October 23, 1984.

*Creation of J & J Trust*

On April 11, 1985, Mr. Dalton Sr. created the J & J Trust (trust), naming himself as trustee and designating his two grandsons, i.e., petitioners' sons Jonathan Dalton and Jeremy Dalton, as the beneficiaries. According to the terms of the trust, the trustee may pay to Jonathan and Jeremy Dalton a portion of the net income, and/or the principal of the trust, as the trustee deems appropriate, for their health, support, education, maintenance, and comfort. The trust terminates upon the death of the last remaining of Mr. Dalton Sr., Mr. Dalton Jr., and Mrs. Dalton Jr., with the remaining principal being divided equally between Jonathan and Jeremy Dalton, or their then-living issue.

By deeds also dated April 11, 1985, Mr. Dalton Sr. transferred title to lots 3, 4, and 5 to himself as trustee of the trust. The deed with respect to lot 3 stated that the premises were conveyed subject to the 1980 mortgage given by petitioners and assumed by Mr. Dalton Sr. pursuant to the 1983 assignment and assumption agreement. No other consider-

---

[3] Although petitioners refer to this conveyance as occurring during April 1983, the copy of the notarized deed in the record is dated Jan. 13, 1983. The discrepancy is not further elucidated in the record but, in any event, has no material impact on the Court's analysis of the instant motion.

[4] Petitioners claimed that the transfer was exempt from real estate transfer tax. Me. Rev. Stat. Ann. tit. 36, sec. 4641–C (1990) allows for real estate transfers between parent and child to be exempt from real estate transfer taxation if the transfer is made without actual consideration.

ation was recited. The three deeds were recorded on August 16, 1985. On October 2, 1985, Mr. Dalton Sr. filed a declaration of Maine real estate transfer tax with regard to the creation of the trust claiming that the transfer was exempt as a gift to a trust.

*Use of Lots 3, 4, and 5*

Jonathan Dalton works as a Navy Seal, living in Virginia but using the address of the Poland property as his domicile. Jeremy Dalton works as an emergency medical technician in Massachusetts but makes regular use of the Poland property.

On September 18, 1993, Mr. Dalton Sr., as trustee of the trust, and Mrs. Dalton Jr. executed a $50,000 mortgage in favor of Key Bank of Maine, secured by lots 3 and 4. A $50,000 home equity line of credit, i.e., loan, was thereby obtained. Both individuals signed as "mortgagor", and provisions of the mortgage recited that the mortgagor, inter alia, promised to "lawfully own the Property". Throughout the administrative and judicial processes pertaining to the instant case, petitioners have maintained and explained that Mrs. Dalton Jr. signed the mortgage as a concession to and at the request of the bank on account of concerns regarding Mr. Dalton Sr.'s advanced age. The funds were employed by Mr. Dalton Sr. as trustee to assist Jonathan Dalton, his grandson and a trust beneficiary, with a boat and jet-ski rental business in St. Martin, French West Indies, that was destroyed by a hurricane in the fall of 1993. Since at least 2000, Key Bank of Maine has reported the mortgage interest on the 1993 loan as being paid by Mr. Dalton Jr.[5]

There is a house (the residence) on the Poland property which became the retirement home of Mr. Dalton Sr. and his wife Beatrice Dalton (Mrs. Dalton Sr.). Petitioners and their sons visited Mr. and Mrs. Dalton Sr. and the Poland property. According to petitioners, the Poland property and related mortgages were maintained and supported before mid-1997 by Mr. Dalton Sr. and by contributions from family members, including petitioners, and the trust maintained a separate bank account for such funds.

During 1996 petitioners' demolition businesses, operated by one or more corporations, suffered reversals and failed to

---

[5] Mortgage interest payments are reported on Form 1098, Mortgage Interest Statement.

pay withholding taxes while awaiting payment from a developer/customer. The developer/customer, however, filed for bankruptcy, and petitioners' corporations were unable to continue business or to pay obligations. Petitioners "lost almost everything" in the collapse when a third-party lender made a claim on a guaranty by petitioners. The claim was settled through the sale of petitioners' home in Massachusetts, all net proceeds of which were paid to creditors.

After losing their home in Massachusetts, petitioners began living in the residence, sharing occupancy with Mr. and Mrs. Dalton Sr. The joint living arrangement was an oral agreement requiring petitioners to manage and maintain the Poland property, pay rent to cover overhead expenses such as mortgage debt service and property taxes, and pay directly their costs of occupancy.

On August 11 and September 29, 1997, the Internal Revenue Service (IRS) recorded assessments against petitioners for trust fund recovery penalties pursuant to section 6672 with respect to employment taxes of petitioners' corporations for the June 30 and September 30, 1996, tax periods, respectively. Those assessments totaled $262,163.42.

On September 13, 1999, Mr. Dalton Sr. died. Petitioners continued to live in the residence with Mrs. Dalton Sr. and to care for Mrs. Dalton Sr., who suffered from advanced dementia and Alzheimer's disease, until she entered an assisted living facility during 2004. By a document dated June 8, 2000, Mr. Dalton Jr. appointed Mrs. Dalton Jr.'s brother Robert Pray (Mr. Pray), who resides in Texas, as successor trustee of the trust, and Mr. Pray formally accepted that appointment. Mr. Pray continued the oral living arrangement that petitioners had with the trust for the Poland property. Since his appointment as trustee, Mr. Pray has held meetings with petitioners three to four times a year setting rent and planning maintenance, has ensured the timely filing of tax returns, and has annually visited the property to ensure that the assets are being protected.

*Administrative Proceedings*

On or about December 9, 1999, petitioners submitted to the IRS an offer-in-compromise of $5,000 with respect to the trust fund recovery penalties referenced above. That offer

was under consideration until rejected by letter dated August 30, 2001, on the principal ground that an acceptable offer would need to include an "alter ego" interest in the property of the trust, for a total offer of at least $240,576.[6] Throughout the process, petitioners sought to supply information and documentation regarding their income, expenses, serious health conditions, and lack of employability, and they disputed IRS conclusions with regard to the trust.

By early to mid-2001, Mr. Dalton Jr. and Mr. Pray had become aware that, since its formation, the trust had not filed Federal income tax returns. At that time, they met with petitioners' certified public accountant (C.P.A.) who prepared Forms 1041, U.S. Income Tax Return for Estates and Trusts, for the trust for tax years 1997 through 2000, a practice that has continued for succeeding years.

By letter dated October 1, 2001, petitioners submitted a formal protest of the August 30, 2001, denial of their offer-in-compromise, requesting reconsideration by the IRS Office of Appeals. The requested review was rejected in a letter dated March 6, 2003, that explained that review of administrative files had revealed that petitioners' protest requesting an Appeals hearing had not been filed timely. The matter was effectively dismissed, thereby allowing further collection activity, as appropriate.

On July 2 and 6, 2004, the IRS issued separately to each petitioner a Final Notice of Intent To Levy and Notice of Your Right to a Hearing pertaining to the previously assessed trust fund recovery penalties and accrued interest which exceeded $400,000 at that time. In response, petitioners submitted a Form 12153, Request for a Collection Due Process Hearing, expressing their disagreement. An extensive attachment chronicled the history of petitioners' personal circumstances and tax matters, summarizing their present situation as follows:

Since 1996, the taxpayers have been in contact with the IRS regarding the satisfaction of this obligation. Mr. Dalton [Jr.] is in his mid 60's. He is totally disabled as a result of workplace injuries suffered over time and resulting arthritis. Mr. Dalton [Jr.] has suffered cardiac problems and has

---

[6] In the Aug. 30, 2001, letter, respondent's revenue officer referred to petitioners' interest in the Poland property as an "alter ego" interest. However, in his motions for summary judgment, respondent refers to petitioners' interest as a nominee interest. Accordingly, we need not address whether petitioners' have an "alter ego" interest in the Poland property.

undergone open chest by-pass surgery. Mr. Dalton [Jr.] has limited employment options and has been unable to work since 2000. Mrs. Dalton [Jr.] is in her mid-60's. Until recently, Mrs. Dalton [Jr.] has been the caretaker for Mr. Daltons [sic] [Jr.'s] elderly mother who suffers from senile dementia and other health problems. Mrs. Dalton [Jr.] has been and remains unemployable. The Daltons have not made enough money in any year since 1999 to require the filing of federal tax returns. There is no possibility that they will ever be able to pay the accumulated tax obligation.

The IRS Office of Appeals collection process was conducted through an ongoing exchange of correspondence and telephone calls extending until late September 2006. Petitioners' objective throughout the process was to establish their entitlement to an offer-in-compromise premised on their circumstances of financial hardship. The proceeding centered on whether the Poland property should be attributed to petitioners under a "nominee" theory. During the process, an advisory opinion was sought and obtained from the IRS Office of Chief Counsel on the applicability of alter ego or nominee principles to petitioners' situation. That opinion considered various factors derived from Federal caselaw and concluded that a nominee relationship did exist between petitioners and the trust. The document also included a paragraph opining that a reachable interest in trust real estate could be asserted against petitioners under a "lien tracing theory," on the basis of their use of funds for mortgage payments, taxes, and other property expenses.[7]

On October 24, 2006, the IRS Office of Appeals issued to each petitioner a separate Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 underlying the instant proceeding. In those notices, the IRS sustained the levy action on the ground that no acceptable collection alternatives had been submitted. Attachments to the notices focused on and explained the determinations in terms of the need for any collection alternative to incorporate equity in real estate held by a trust with respect to which petitioners stood in a nominee relationship.

On November 16, 2006, petitioners filed a petition in this Court seeking judicial review of the proposed levy action.

---

[7] Although the lien tracing theory appeared in subsequent correspondence before the filing of the instant case, respondent no longer pursues such a theory.

On April 10, 2007, respondent mailed the trust a Notice of Federal Tax Lien Filing—Nominee or Alter-Ego. The notice stated that the trust was identified as the nominee of Mr. Dalton Jr.[8]

On July 6, 2007, respondent filed a motion for summary judgment on all issues stating that the Appeals Office did not abuse its discretion in determining that a nominee relationship existed between petitioners and the trust and sustaining the levy action. On August 29, 2007, petitioners filed an objection to respondent's motion for summary judgment.

On July 7, 2008, we issued our prior opinion denying respondent's motion for summary judgment and remanding the case to respondent's Office of Appeals to consider whether respondent's assertion of a nominee interest in the Poland property is proper, taking into account both a State law and a Federal factors analysis.

Ms. Russo, the settlement officer who conducted petitioners' original collection due process hearing, held a supplemental hearing with petitioners. Petitioners provided Ms. Russo with additional information regarding their interest in the Poland property. Ms. Russo offered petitioners an opportunity to submit a new offer-in-compromise, and petitioners declined that offer. Ms. Russo then referred the case to respondent's District Counsel's office for analysis on whether petitioners have an interest in the Poland property under Maine law.

The District Counsel's office performed an analysis of the issues presented and determined that Maine does not have developed law regarding nominee ownership. The District Counsel's office then concluded that, under Federal nominee factors, the trust is petitioners' nominee.[9]

On December 1, 2008, Ms. Russo mailed each petitioner a separate Supplemental Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330 (supplemental notice of determination). In the supplemental notice of determination, Ms. Russo concluded that Maine law was

---

[8] The trust is not a party to the instant case. It is unclear from the record why the trust's Notice of Federal Tax Lien Filing—Nominee or Alter-Ego did not include Mrs. Dalton Jr.

[9] The District Counsel's office also concluded that petitioners had an interest in the Poland property under a lien tracing theory, and, at the very least, a transferee lien exists against the Poland property based upon the enrichment of the property to the extent of mortgage payments and other expenses paid by petitioners.

silent on the nominee issue and she reaffirmed the conclusion that the trust was petitioners' nominee.

## *Discussion*

As a threshold matter to our analysis, we note that petitioners contest our jurisdiction. Petitioners contend that we cannot enter a decision which would affect the ownership interests of the trust because neither the trust nor the trustee is a party to the current suit.

This Court is a court of limited jurisdiction, and we may exercise judgment only to the extent authorized by Congress. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). In order to invoke judicial review of a section 6330 determination, a taxpayer must be the person liable for the tax under section 6331 and must have received from the IRS a valid notice of determination based on a section 6330 hearing. See *Offiler v. Commissioner*, 114 T.C. 492, 498 (2000); see also Rule 330(b).

Regulations promulgated under section 6330 state that known nominees or persons holding property of the taxpayer are not entitled to a collection due process or equivalent hearing. Sec. 301.6330–1(b)(2), Q&A–B5, Proced. & Admin. Regs. Individuals not entitled to a section 6330 review are entitled to other forms of review, including reconsideration by the IRS office collecting the tax, assistance from the National Taxpayer Advocate, or an administrative hearing before the Appeals Office under the Collection Appeals Program. *Id.* Any determination resulting from such reviews, however, is not subject to judicial review. *Id.* The taxpayer for whom a nominee, transferee, or alter ego is holding property is entitled to a hearing under section 6330. Sec. 301.6330–1(b)(3), *Example*, Proced. & Admin. Regs. Failure to provide a taxpayer with notice of the filing of a levy will serve as a basis for dismissal. See sec. 6330(a)(1); *Kennedy v. Commissioner*, 116 T.C. 255, 261 (2001); see also *S & M Trust No. 1 v. Commissioner*, T.C. Memo. 2008–72; *Buffano v. Commissioner*, T.C. Memo. 2007–32.

Petitioners are correct that we cannot enter a decision affecting the trust because the trust is not a party to this proceeding.[10] See sec. 301.6330–1(b)(3), *Example*, Proced. &

---

[10] We note that, on Apr. 7, 2007, respondent filed a Notice of Federal Tax Lien Filing—Nomi-

Continued

Admin. Regs. However, that is not what we are called upon to decide. We must decide whether respondent abused his discretion in the supplemental notice of determination by rejecting petitioners' offer-in-compromise on the basis that the offer did not include petitioners' alleged nominee interest in the Poland property. In doing so, we must decide whether petitioners have such a nominee interest. Petitioners received notices sustaining levies against them and timely filed a petition with this Court. Accordingly, we hold that we have jurisdiction to decide the nominee interest issue as it pertains to respondent's rejection of petitioners' offer-in-compromise on the basis that the offer did not include petitioners' alleged nominee interest in the Poland property.

We next consider whether respondent abused his discretion in the supplemental notice of determination by rejecting petitioners' offer-in-compromise on the basis that it did not include a nominee interest in the Poland property. To do so, we must decide the following issues: (1) Whether petitioners have an interest in the Poland property under Maine law; and (2) whether petitioners have an interest in the Poland property under a Federal nominee factors analysis.

Rule 121(a) allows a party to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Rule 121(b) directs that a decision on such a motion shall be rendered "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."

The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Facts are viewed in the light most favorable to the nonmoving party. *Id.* However, where a motion for summary judgment has been properly made and supported, the opposing party may not rest upon mere allegations or denials in that party's pleadings but must by affida-

_____

nee or Alter-Ego, against the trust, but that notice was not filed until after the petition in this case was filed. That lien is not before the Court in this proceeding.

vits or otherwise set forth specific facts showing that there is a genuine issue for trial. Rule 121(d).

The parties appear to agree that all of the evidence that the parties wish the Court to consider is in the record and that no material facts are in dispute.[11] Accordingly, we conclude that the instant case is ripe for summary judgment and that a trial is not necessary.

As a general rule, section 6331(a) authorizes the Commissioner to levy upon all property and rights to property of a person where there exists a failure on the part of such person to pay any tax liability within 10 days after notice and demand for payment. Sections 6331(d) and 6330 set forth procedures generally applicable to afford protections for persons in such levy situations. Section 6331(d) establishes the requirement that the person be provided with at least 30 days' prior written notice of the Commissioner's intent to levy before collection may proceed. Section 6330(a) forbids collection by levy until the person has received notice of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals. Section 6330(b) grants a person who makes such a request the right to a fair hearing before an impartial Appeals officer.

Section 6330(c) addresses the matters to be considered at the hearing:

SEC. 6330(c). MATTERS CONSIDERED AT HEARING.—In the case of any hearing conducted under this section—

(1) REQUIREMENT OF INVESTIGATION.—The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.

(2) ISSUES AT HEARING.—

(A) IN GENERAL.—The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including—

(i) appropriate spousal defenses;

(ii) challenges to the appropriateness of collection actions; and

(iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

---

[11] The U.S. Court of Appeals for the First Circuit, the court to which an appeal of the instant case would lie, has held that judicial review of nonliability issues under sec. 6330(d) is limited to the administrative record. See *Murphy v. Commissioner*, 469 F.3d 27, 31 (1st Cir. 2006), affg. 125 T.C. 301 (2005). The Tax Court follows the law of the circuit in which an appeal would lie if that law is on point. *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

(B) UNDERLYING LIABILITY.—The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows the person to seek review in the Tax Court. [12] In considering any relief from the Commissioner's determination to which the person may be entitled, this Court has established the following standard of review:

where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [*Sego v. Commissioner*, 114 T.C. 604, 610 (2000).]

Petitioners have not contested respondent's determination of their underlying liability. Accordingly, we deem that issue conceded.

As noted above, section 6331(a) generally authorizes collection of tax by levy against "all property and rights to property" belonging to a person liable for the tax or on which there is a lien for the payment of such tax. It is well settled that the foregoing provision "'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" *Drye v. United States*, 528 U.S. 49, 56 (1999) (quoting *United States v. Natl. Bank of Commerce*, 472 U.S. 713, 719–720 (1985)). Such a lien or levy reaches, inter alia, to property held by a third party if that third party is holding the property as a nominee or alter ego of the delinquent person. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–351 (1977); *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007); *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005). A nominee theory focuses on whether the taxpayer is the true beneficial owner of the property on the basis of how the taxpayer treats the property. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000).

---

[12] The Pension Protection Act of 2006, Pub. L. 109–280, sec. 855, 120 Stat. 1019, amended sec. 6330(d)(1) to provide that for determinations made after Oct. 16, 2006, the Tax Court has jurisdiction to review the Commissioner's collection activity regardless of the type of underlying tax involved.

However, because the Federal levy statute "'creates no property rights but merely attaches consequences, Federally defined, to rights created under state law'", applicability of nominee principles to support a levy turns on a two-part inquiry. *United States v. Natl. Bank of Commerce*, *supra* at 722 (quoting *United States v. Bess*, 357 U.S. 51, 55 (1958)); see also *Drye v. United States*, *supra* at 58 ("We look initially to state law to determine what rights the * * * [person] has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."); *Holman v. United States*, *supra* at 1067; *Spotts v. United States*, *supra* at 251.

The first question is whether, under State law, the person held an interest or rights in the property sought to be reached. *Holman v. United States*, *supra* at 1067–1068; *Spotts v. United States*, *supra* at 251; *May v. A Parcel of Land*, 458 F. Supp. 2d 1324, 1334–1335 (S.D. Ala. 2006), affd. without published opinion sub nom. *May v. United States*, 100 AFTR 2d 2007–6602, 2007–2 USTC par. 50,799 (11th Cir. 2007); *United States v. Krause*, 386 Bankr. 785, 831 (Bankr. D. Kan. 2008). Upon an affirmative answer, the evaluation proceeds to the second question of whether the IRS may reach the interest under Federal law. *Holman v. United States*, *supra* at 1067–1068; *Spotts v. United States*, *supra* at 251; *May v. A Parcel of Land*, *supra* at 1334–1335; *United States v. Krause*, *supra* at 831.

With respect to the State law question, recent cases have clarified the centrality of finding a State law interest as a condition precedent. *Holman v. United States*, *supra* at 1067, 1070 (vacating and remanding a case seeking to enforce a nominee tax lien for the IRS first to establish that the person held a beneficial interest in the property under State law); *Spotts v. United States*, *supra* at 251, 253–254 (vacating and remanding a grant of summary judgment for the IRS in a case seeking removal of a nominee lien because the lower court did not first consider whether the person had a beneficial interest under State law); *May v. A Parcel of Land*, *supra* at 1334–1335; *United States v. Krause*, *supra* at 831. In that connection, various theories have been used to support the existence of an interest under State law, depending

upon the jurisdiction and particular facts involved. Examples include resulting trust doctrines, constructive trust principles, fraudulent conveyance standards, and concepts drawn from State jurisprudence on piercing the corporate veil. See, e.g., *Holman v. United States*, *supra* at 1068 (and cases cited threat); *Spotts v. United States*, *supra* at 252–253; *Criner v. Commissioner*, T.C. Memo. 2003–328; *United States v. Evseroff*, 92 AFTR 2d 2003–6987 (E.D.N.Y. 2003) (and cases cited therein); *United States v. Krause*, *supra* at 831 (and cases cited threat).

Where State law is undeveloped as to the issue of nominee ownership, Federal courts have relied on a relatively well-defined body of Federal common law. Caselaw jurisprudence has established a series of factors to consider in determining whether a taxpayer has an existing beneficial interest in property that is reachable for purposes of satisfying Federal tax liabilities under the theory that the property is held by a nominee of the delinquent taxpayer. Commonly cited criteria include: (1) Whether the nominee paid no consideration or inadequate consideration for the property and/or whether the taxpayer expended personal funds for the nominee's acquisition; (2) whether property was placed in the nominee's name in anticipation of a suit or the occurrence of liabilities; (3) whether a close personal or family relationship existed between the taxpayer and the nominee; (4) whether the conveyance of the property was recorded; (5) whether the taxpayer retained possession of, continued to enjoy the benefits of, and/or otherwise treated as his or her own the transferred property; (6) whether the taxpayer after the transfer paid costs related to maintenance of the property (such as insurance, tax, or mortgage payments); (7) whether, in the case of a trust, there were sufficient internal controls in place with respect to the management of the trust; and (8) whether, in the case of a trust, trust assets were used to pay the taxpayer's personal expenses. E.g., *Holman v. United States, supra* at 1065 n.1; *Spotts v. United States, supra* at 253 n.2; *Loving Saviour Church v. United States*, 728 F.2d 1085, 1086 (8th Cir. 1984); *May v. A Parcel of Land*, *supra* at 1338; *United States v. Dawes*, 344 F. Supp. 2d 715, 721 (D. Kan. 2004), affd. 161 Fed. Appx. 742 (10th Cir. 2005); *United States v. Krause*, *supra* at 831.

For purposes of the second inquiry, Federal law determines whether the State-created interests are property or rights to property under section 6331. *Drye v. United States*, 528 U.S. at 52. Even though certain interests may not be reached by creditors under State law, the language in section 6331 is broad and is meant to reach every interest in property that a taxpayer might have. See, e.g., *Drye v. United States*, *supra* (holding that a right to disclaim an inheritance represents a interest subject to Federal tax lien); *United States v. Natl. Bank of Commerce*, 472 U.S. at 730 (holding that a taxpayer's right to withdraw the entire proceeds from a joint bank account constitutes "property" or "rights to property" subject to Federal income tax levy even though it could not be reached by creditors under State law); *21 W. Lancaster Corp. v. Main Line Rest., Inc.*, 790 F.2d 354, 357–358 (3d Cir. 1986) (although a liquor license did not constitute under State law "property" subject to execution by a judgment holder or subject to a security interest under the Uniform Commercial Code, it was nevertheless "property" subject to Federal tax lien).

As stated above, pursuant to our prior opinion, we remanded the instant case to respondent's Appeals Office to consider Maine law as well as a Federal factors analysis.

We next consider Maine law. As stated above, a taxpayer must have an interest in property under State law in order for the IRS to properly levy on the property pursuant to section 6331. Respondent contends that Maine law is silent with regard to the nominee doctrine.[13] However, as we noted *supra* pp. 405–406, several courts have considered State law variants of the nominee doctrine even though that law is not specifically called "nominee law" in deciding whether a levy is valid under section 6331. See *Spotts v. United States*, *supra* at 253 (opining that "Kentucky does have law that provides guidance on nominee theory, though it discusses the theory using the term 'constructive trust'"); *Scoville v.*

---

[13] *Keefer v. Keefer*, No. Civ.A. RE–03–001, 2004 WL 1598713, at *6 (Me. Super. Ct. June 28, 2004) (quoting Black's Law Dictionary (5th ed. 1979)), defines a nominee as someone who is

"designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, in representation of another, or as the grantee of another."

However, in that case, the court was discussing nominee principles pursuant to California law. See *Keefer v. Keefer*, *supra* at *6.

*United States*, 250 F.3d 1198, 1202 (8th Cir. 2001) (looking to Missouri law of fraudulent conveyance for purposes of evaluating State standards for nominee liability); *May v. A Parcel of Land*; 458 F. Supp. 2d at 1337 n.22 ("the undersigned will accord no talismanic significance to the magic words 'nominee doctrine,' nor will it infer from their absence that Alabama authorities fail to recognize a theory akin to that which federal courts have labeled 'nominee doctrine'"); *United States v. Stinson*, 386 F. Supp. 2d 1207, 1218 (W.D. Okla. 2005) (looking at Oklahoma fraudulent conveyance principles in evaluating nominee argument). Accordingly, we will consider Maine law, as we interpret it, to decide whether the trust is a nominee of petitioners and whether petitioners, following their transfers of lots 3 and 4 to Mr. Dalton Sr., and his transfers of those lots, together with lot 5, to the trust, retained an interest in the Poland property that may be reached by respondent's levy.

In Maine the existence of a contract is a question of fact to be determined by the finder of fact. *Sullivan v. Porter*, 861 A.2d 625, 631 (Me. 2004).

A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities * * *

The essential terms for a contract to sell land include the identification of the property, the parties to the sale, the purchase price, the amount of downpayment, and the financing. *Id.* The Maine statute of frauds requires a contract for the sale of land to be in writing, signed by the party to be charged. Me. Rev. Stat. Ann. tit. 33, sec. 51(4) (1999). In a contract for the sale of land, the consideration does not need to be expressed in the contract. *Id.* Additionally, the transfer of title requires a manual transfer of a deed and an intent to pass title between a grantor and a grantee. *Estate of Deschenes*, 818 A.2d 1026, 1029 (Me. 2003). When there is a physical transfer of possession of the deed from one party to another, a presumption arises that both parties intended the transfer of title in accordance with the terms of the deed. *Id.* at 1029–1030. "A grantee's failure to record a deed does not rebut the presumption of delivery." *Id.* at 1030.

On January 13, 1983, petitioners agreed to sell lots 3 and 4 to Mr. Dalton Sr. for $1 subject to an existing mortgage. According to the deed and the assignment and assumption agreement, petitioners transferred their entire interest in lots 3 and 4. As stated above, Maine law does not require the consideration in a land sale contract to be expressed in the contract. Me. Rev. Stat. Ann. tit. 33, sec. 51(4). Mr. Dalton Sr.'s consideration was the assumption of the mortgage on lot 3 of the Poland property. That consideration was memorialized in an agreement dated April 1, 1983. Additionally, the contract identified the parties to the sale, the land, and the purchase price; i.e., the assumption of an existing mortgage. Both parties signed the deed that transferred lots 3 and 4. Accordingly, petitioners and Mr. Dalton Sr. mutually assented to the 1983 contract, their assent was expressly manifested, and the 1983 contract was sufficiently definite to enable a court to ascertain its exact meaning and fix exactly the legal liabilities. See *Sullivan v. Porter*, *supra* at 631. Moreover, while recordation occurred on May 2, 1983, the delivery of the deed and the contract are evidence of a physical transfer of title and an intent to transfer title from petitioners to Mr. Dalton Sr. Therefore, the transfer extinguished petitioners' legal title in lots 3 and 4 as of the date of transfer.

In arguing that petitioners retained a nominee ownership interest in lots 3 and 4 under Federal common law, respondent contends that petitioners retained an interest because, among other things, they paid the purchase money. As stated above, petitioners originally purchased lots 3 and 4. Lot 3 was secured by a mortgage. There is no mention of a mortgage or other encumbrance on lot 4. Accordingly, we will assume that petitioners purchased lot 4 without a loan, or other debt obligation. Following the contribution of the Poland property to the trust, the mortgages on lot 3 and lot 5 were maintained by Mr. Dalton Sr., with contributions from Mr. Dalton Jr. and other family members. During 1997 petitioners moved into the residence on the Poland property and subsequently paid rent that covered overhead expenses, including mortgage expenses, property taxes, and utilities, and their costs of occupancy.

Under Maine law:

A resulting trust arises by implication of law when the purchase money is paid by one person out of his own money, and the land is conveyed to another. * * * It may be paid for him by the trustee. * * * The trust arises from the circumstance that the money of the real purchaser, and not of the grantee in the deed, formed the consideration of the purchase. * * *

*Murphy v. United States*, 83 AFTR 2d 99–1167, at 99–1170 (D. Me. 1999); *Wood v. Le Goff*, 121 A.2d 468, 469–470 (Me. 1956); *Herlihy v. Coney*, 59 A. 952, 952–953 (Me. 1905). In those situations, the grantee holds the property in trust for the benefit of the person who paid the purchase price. See *Wood v. LeGoff, supra*; *Herlihy v. Coney, supra*; see also 1 Restatement, Trusts 3d, sec. 9 (2003). However, where the transferee is a spouse, descendant, or other natural object of the bounty of the person who paid the purchase price, a gift is presumed. *Greenberg v. Greenberg*, 43 A.2d 841, 842 (Me. 1945); 1 Restatement, *supra* sec. 9(2).[14] Additionally, evidence to establish a resulting trust under Maine law must be "'the most satisfactory and convincing evidence'" because the creation of a resulting trust is "'in defiance of the statute of frauds [and] subversive of paper title.'" *Murphy v. United States, supra* at 99–1170 (quoting *Anderson v. Gile*, 78 A. 370, 371 (Me. 1910)).

The funds for the purchase of lot 3 were furnished by petitioners, and we conclude that the transfer of lot 3 was intended as a gift to Mr. Dalton Sr. The mortgage payments on lot 4 were paid by petitioners, and we conclude that the payments were a gift to Mr. Dalton Sr. each time petitioners paid the mortgage. As Mr. Dalton Sr. is Mr. Dalton Jr.'s father, their familial relationship makes it probable that petitioners would make a gift of the property to Mr. Dalton Sr., as opposed to a resulting trust in Mr. Dalton Jr.'s favor for lots 3 and 4. We conclude from the record that the transfers were gifts to Mr. Dalton Sr. See *Wood v. LeGoff, supra* at 470 ("It does not matter in this case whether a consideration passed for the deed given * * *. If no consideration [passed,] the conveyance was a gift"). Our conclusion is in

---

[14] Maine courts have held that, where the transfer is to a spouse or from a parent to a child, a gift is presumed. See *Greenberg v. Greenberg*, 43 A.2d 841, 842 (Me. 1945); *Danforth v. Briggs*, 36 A. 452 (Me. 1896); *Wentworth v. Shibles*, 36 A. 108, 109 (Me. 1896); *Long v. McKay*, 24 A. 815 (Me. 1892). Maine courts have not addressed whether the presumption of a gift extends to other relatives of the person who paid the purchase price.

accord with petitioners' statement attached to Form 12153, that lots 3 and 4 were "acquired originally for the benefit of Mr. Daltons' [sic] [Jr.] father and mother."

Respondent cites *Cody v. United States*, 348 F. Supp. 2d 682 (E.D. Va. 2004), for the proposition that the doctrine of resulting trust does not properly reach the nominee issue in this case. In *Cody*, the court noted that Virginia law recognized the doctrine of resulting trust; however, the court declined to apply the resulting trust doctrine because the plaintiffs argued "only for the existence of an express trust." *Id.* at 692. The court also noted that a resulting trust would not arise because *Cody* involved a parent paying for the property of a child, which would result in the presumption of a gift. *Id.* at 692 n.10. Accordingly, our conclusion that the transfer of lots 3 and 4 is a gift is consistent with *Cody*.

Maine law could also, under certain circumstances, set aside the transfer of lots 3 and 4 under the law of fraudulent conveyances. See Me. Rev. Stat. Ann. tit. 14, secs. 3571–3582 (2003); see also *Scoville v. United States*, 250 F.3d at 1202 (looking to Missouri law of fraudulent conveyance for purposes of evaluating State standards for nominee liability). Because respondent was not a creditor in 1983 at the time of the transfer from petitioners to Mr. Dalton Sr., we will analyze respondent's position as a future creditor under Maine law.[15] A transfer is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer:

A. With actual intent to hinder, delay or defraud any creditor of the debtor; or

B. Without receiving a reasonably equivalent value in exchange for the transfer or obligations and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debts became due.
    [Me. Rev. Stat. Ann. tit. 14, sec. 3575(1).[16]]

---

[15] Maine law allows both present and future creditors to set aside fraudulent conveyances. Me. Rev. Stat. Ann. tit. 14, secs. 3571–3582 (2003).

Respondent does not contend that the transfers in 1983 were fraudulent as to other creditors.

[16] Me. Rev. Stat. Ann. tit. 14, sec. 3575(1) applies not only to transfers made but also to obligations incurred by a debtor.

Continued

When determining actual intent, consideration is given, among other factors, to whether:

A. The transfer or obligation was to an insider;

B. The debtor retained possession or control of the property transferred after the transfer;

C. The transfer or obligation was disclosed or concealed;

D. Before the transfer was made or obligation was incurred, the debtor sued or was threatened with suit;

E. The transfer was of substantially all of the debtor's assets;

F. The debtor absconded;

G. The debtor removed or concealed assets;

H. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

I. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

J. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

K. The debtor transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.
   [*Id.* sec. 3575(2).]

Subsection (1)(B)(1) allows future creditors to recover when a transfer for inadequate value leaves the debtor's business inadequately capitalized. *Id.* sec. 3575, Me. cmt. 2. Subsection (1)(B)(2) does not require proof of fraudulent intent, but it does require proof that the debtor intended to incur debts beyond his ability to pay or reasonably should have believed that he would incur such debts. *Id.* Me. cmt. 3.

We concluded above that the transfer of lots 3 and 4 was a gift to Mr. Dalton Sr. The deeds showing the transfer of lots 3 and 4 were recorded within 4 months after the transfer. At that time, petitioners had not been sued or threatened with suit, and there is no evidence that the

---

Me. Rev. Stat. Ann. tit. 14, sec. 3576 applies only to present creditors of the debtor. According to Me. Rev. Stat. Ann. tit. 14, sec. 3576(2):

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

However, we do not evaluate the transfers in the instant case as transfers to an insider pursuant to Me. Rev. Stat. Ann. tit. 14, sec. 3576(2), because respondent was a future creditor at the time of the transfer.

transfer was made to hide assets from creditors; the deeds were publicly recorded. The record does not show that petitioners concealed assets, were insolvent at the time of the transfer, or became insolvent as a result of the transfer. We conclude from the record that the transfer of lots 3 and 4 to Mr. Dalton Sr. was not made with fraudulent intent.

Additionally, we conclude on the basis of the record that, at the time of the transfer, petitioners did not intend to incur debts beyond their ability to pay. Indeed, the Federal income tax liability in question accrued 13 years after the transfer of lots 3 and 4. On the basis of the record, we hold that petitioners did not fraudulently convey lots 3 and 4.

Following the acquisition of lots 3 and 4, Mr. Dalton Sr. acquired lot 5 on September 24, 1984, from an unrelated third party. The deed to lot 5 and a mortgage in favor of the seller were recorded on October 23, 1984. Petitioners did not control lot 5 before it was transferred to the trust. Moreover, lot 5 was not included in the 1993 mortgage agreement in which Mrs. Dalton Jr. indicated that she was a joint owner with Mr. Dalton Sr. of lots 3 and 4. We assume, for purposes of the instant motion, that petitioners paid for lot 5 and, as with lots 3 and 4, that petitioners made a gift to Mr. Dalton Sr. of lot 5 when it was transferred to him. See *Greenberg v. Greenberg*, 43 A.2d at 842; 1 Restatement, *supra* sec. 9(2). Moreover, even if the transfer of lot 5 was a gift, petitioners retained no interest in lot 5 immediately following the transfer by Mr. Dalton Sr. to the trust.[17] See *Cody v. United States*, 348 F. Supp. at 692 n.10.

Mr. Dalton Sr. contributed the Poland property to the trust on April 11, 1985.[18] As stated above, the trust was set up to hold the property for the benefit of Mr. Dalton Sr.'s grandsons; i.e., petitioners' children, Jonathan and Jeremy Dalton. We will next analyze whether Mr. Dalton Sr. created a beneficial ownership interest for petitioners in the Trust to which the levy under section 6331 could attach.

---

[17] Petitioners' gift of funds for lot 5 to Mr. Dalton Sr. is subject to a fraudulent conveyance analysis similar to that of the transfers of lots 3 and 4. The record does not show that as a result of the gift of lot 5 petitioners concealed assets, were insolvent, or intended to incur debts beyond their ability to pay. Similarly, we conclude that petitioners' gift of funds for the purchase of lot 5 was not a fraudulent conveyance.

[18] Analysis under the law of fraudulent conveyances is not applicable to Mr. Dalton Sr.'s contribution of the Poland property to the trust. See Me. Rev. Stat. Ann. tit. 14, sec. 3575 ("if the debtor made the transfer").

A trust may be created by a transfer of property, declaration, or exercise of a power of appointment in favor of a trustee. Me. Rev. Stat. Ann. tit. 18–B, sec. 401 (Supp. 2009).[19] According to the Maine Uniform Trust Code, a trust is created only if:

A. The settlor has capacity to create a trust
B. the settlor indicates an intention to create the trust
C. the trust has a definite beneficiary * * *

> * * * * * * *

D. the trustee has duties to perform; and
E. the same person is not the sole trustee and sole beneficiary.

*Id.* sec. 402; *Estate of Fournier*, 902 A.2d at 853. Maine also requires the intention to create a trust. Me. Rev. Stat. Ann. tit. 18–B, sec. 402, Me. cmt. (citing *Gower v. Keene*, 93 A. 546, 547 (Me. 1915) ("to create a trust the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another")).

The three deeds effecting the transfer of lots 3, 4, and 5 to the trust were transferred on April 11, 1985, and recorded on August 16, 1985. Mr. Dalton Sr. unequivocally indicated his intention to create a trust by a deed conveying the land to himself as trustee for the benefit of his grandsons, and by memorializing his intent in the trust agreement. Mr. Dalton Sr.'s duties as trustee included maintaining the trust corpus for the benefit of his grandsons. Additionally, Mr. Dalton Sr. is not a beneficiary of the trust. Accordingly, we conclude that Mr. Dalton Sr. created a valid express trust pursuant to the Maine Uniform Trust Code.

Under the trust agreement, petitioners do not have any right to any of the corpus of the validly created trust; they are not express or implied beneficiaries of the trust. Mr. Dalton Jr. became the trustee of the trust before the appointment of Mr. Pray as trustee.[20] As trustee, Mr. Dalton Jr.

---

[19] Maine adopted the Uniform Trust Code in 2003 with an effective date of July 1, 2005. Me. Rev. Stat. Ann. tit. 18–B, sec. 1103 (Supp. 2009). The Maine Uniform Trust Code applies to all trusts created on, after, or before July 1, 2005, and all judicial proceedings concerning trusts commenced after July 1, 2005. Me. Rev. Stat. Ann. tit. 18–B, sec. 1104 (Supp. 2009). Pursuant to the Trust Agreement, Maine law is the governing law. As the instant proceeding is one commenced after July 1, 2005, regarding a Maine express trust, the Maine Uniform Trust Code applies.

[20] Per the trust agreement, Mr. Dalton Jr. became trustee upon Mr. Dalton Sr.'s death. Respondent contends that Mr. Pray was appointed trustee during 2001, while petitioners contend that Mr. Pray was appointed trustee during 1999. According to Mr. Pray's affidavit, he was ap-

would have only legal title, not beneficial title. A nominee interest is essentially equivalent to a beneficial interest. See *Oxford Capital Corp. v. United States*, 211 F.3d at 284 ("'A nominee theory involves the determination of the true beneficial ownership of property.'" (quoting Elliot, Federal Tax Collections, Liens, and Levies, par. 9.10[2] (2d ed. 2000))). Jonathan Dalton and Jeremy Dalton are the named beneficial interest holders in the Poland property; i.e., they are the express beneficiaries of the Trust. Petitioners' oral arrangement to live in the residence, which began in 1997, subjects them to rental payments to the owners of the beneficial interest. However, the oral agreement does not create in petitioners an express or implied beneficial interest in the Trust. Whether or not the act of living on the trust property may appear to create a form of beneficial interest, we conclude that it did not create such an interest since petitioners paid rent in the form of payments for mortgage debt service, property taxes, maintenance, and costs of occupancy and also cared for Mr. and Mrs. Dalton Sr. Additionally, the appointment of Mr. Dalton Jr. as trustee does not create property or a right to property to which the section 6331 levy could attach. On the basis of the record, we conclude that petitioners do not have a beneficial interest in the Poland property held in the trust.

We now consider the Federal factors in our analysis. As we stated in our prior opinion, when State law is undeveloped[21] on the nominee theory, Courts have turned to a series of factors to determine whether a taxpayer has an interest in property or rights to property that may be attached by a creditor of the taxpayer. See *Dalton v. Commissioner*, T.C. Memo. 2008–165. As stated above, those criteria include: (1) Whether no consideration or inadequate consideration was paid for the property by the property title holder (nominee)

pointed trustee during 2000 and this was formalized in writing on June 8, 2000. We conclude on the basis of Mr. Pray's affidavit that he was appointed trustee during early 2000.

Mr. Pray's affidavit was attached to petitioners' objection to respondent's original motion for summary judgment. In our prior opinion, we declined to rule on that motion and, instead, remanded the instant case to respondent's Office of Appeals to consider Maine law and a Federal factors analysis. At that point, the affidavit became part of the administrative record and is properly before us now.

[21] We do not believe that Maine law is undeveloped on the nominee theory. Indeed, our analysis above is based upon the analysis we believe Maine courts would undertake to determine whether petitioners held a nominee interest. However, as this issue is less than clear, we will also consider the Federal factors analysis in reaching our conclusion.

and/or whether the taxpayer expended personal funds for the nominee's acquisition; (2) whether property was placed in the nominee's name in anticipation of a suit or the occurrence of liabilities; (3) whether a close personal or family relationship existed between the taxpayer and the nominee; (4) whether the conveyance of the property was recorded; (5) whether the taxpayer retained possession of, continued to enjoy the benefits of, and/or otherwise treated as his or her own the transferred property; (6) whether the taxpayer after the transfer paid costs related to maintenance of the property (such as insurance, tax, or mortgage payments); (7) whether, in the case of a trust, there were sufficient internal controls in place with respect to the management of the trust; and (8) whether, in the case of a trust, trust assets were used to pay the taxpayer's personal expenses. E.g., *Holman v. United States*, 505 F.3d at 1065 n.1; *Spotts v. United States*, 429 F.3d at 253 n.2; *Loving Saviour Church v. United States*, 728 F.2d at 1086; *May v. A Parcel of Land*, 458 F. Supp. 2d at 1338; *United States v. Dawes*, 344 F. Supp. 2d at 721; *United States v. Krause*, 386 Bankr. at 831.

In examining the above-stated factors, the overarching issue is whether and to what degree the person generally exercises control over the nominee and assets held thereby. E.g., *May v. A Parcel of Land*, *supra* at 1338 (and cases cited thereat). As phrased in one recent case: "The ultimate inquiry is whether the * * * [person] has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." *Holman v. United States*, *supra* at 1065. No one factor is decisive in the cases involving the nominee theory. *Turk v. IRS*, 127 F. Supp. 2d 1165, 1168 (D. Mont. 2000). The ultimate inquiry requires consideration of *all* of the facts and circumstances to determine the true beneficial owner of the property. *Spotts v. United States*, *supra* at 253 n.2.

Courts also must be cognizant of letting a close relationship take precedence over all of the other factors. However, a close relationship between grantor and grantee does not necessarily make the grantee the grantor's nominee. *Turk v. IRS*, *supra* at 1168. Courts also must be aware of taxpayers' legitimate decisions regarding title to the property. *Spotts v. United States*, *supra* at 253 n.2.

The Poland property was not placed in Mr. Dalton Sr.'s name in anticipation of a specific suit or the occurrence of certain liabilities. As we concluded above, the transfer of the Poland property was a gift. The record does not show that petitioners' motive in transferring the Poland property was to evade creditors. Petitioners gave the Poland property to Mr. Dalton Sr. nearly 11 years before the tax liability to respondent arose. We conclude that petitioners' transfers to Mr. Dalton Sr. were not made in anticipation of a specific suit or certain liabilities in the future and, therefore, were not made in anticipation of the liabilities in issue.

A close relationship did exist between petitioners and Mr. Dalton Sr.; Mr. Dalton Sr. was the father of Mr. Dalton Jr. Mr. Dalton Jr. served as the contractor for the expansion of the home on the Poland property and paid some of the bills. Several courts have warned against allowing the close-relationship factor to overinfluence the Federal factors analysis. See *United States v. Swan*, 467 F.3d 655, 658 (7th Cir 2006) ("transactions among friends or even relatives are not presumptively fishy—they minimize information and brokerage costs"); *Spotts v. United States*, 429 F.3d at 253 n.2 (cautioning that rigid adherence to the Federal factors may not be appropriate in every case); *Turk v. IRS*, *supra* at 1168 (warning against allowing the close-relationship factor to preempt each of the other categories); see also Hoffer et al., "To Pay or Delay: The Nominee's Dilemma Under Collection Due Process", 82 Tul. L. Rev. 781, 810 (2008) (noting that the Federal factors analysis is difficult to apply when the delinquent taxpayer and the accused nominee are members of the same family). Moreover, at the time of the transfer, there was little reason to infer that petitioners made the transfers to Mr. Dalton Sr. for the purpose of defeating respondent's claims. We have considered the close relationship factor, but conclude that the other factors outweigh the relationship.

The transfers of the Poland property to Mr. Dalton Sr. and then to the trust were properly recorded. Lots 3 and 4 were transferred by deed to Mr. Dalton Sr. on January 13, 1983, and the deed was recorded May 2, 1983. The deed by which Mr. Dalton Sr. acquired lot 5 was dated September 24, 1984, and recorded on October 23, 1984. The assignment and assumption agreement was signed on April 1, 1983, and was recorded on August 16, 1985. Respondent points to the delay

in the recording of the assignment and assumption agreement as evidence of improper intent. However, we conclude that the delay in recording of the assignment and assumption agreement is not material as the deed to lots 3 and 4 recorded on May 2, 1983, would have provided notice to respondent of the original transfer from petitioners to Mr. Dalton Sr. Additionally, long before petitioners' tax debt to respondent arose, the assignment and assumption agreement had been recorded. We also note that the deeds placing the Poland property in trust were recorded in 1985, nearly 11 years before the liability in the instant case arose. Under Maine law, the failure to record a deed does not render a transfer void; the delivery of the deed is still sufficient to transfer the property. *Estate of Deschenes*, 818 A.2d at 1030. As noted above, the deeds for all transfers were both delivered and recorded.[22] We also note that petitioners and Mr. Dalton Sr. filed declarations of Maine real estate transfer taxation with regard to each questioned transaction. Accordingly, we conclude that the deeds conveying the Poland property were recorded within a reasonable time after the conveyances were accomplished and well before the liability to respondent arose.

Petitioners' treatment of the Poland property raises concerns that they have treated it as their own. Petitioners live at the residence, pay for maintenance of the residence, and have no written lease regarding their living arrangement. The Forms 1098 issued by Key Bank regarding the mortgage on lots 3 and 4 list petitioners as the owners. Mrs. Dalton Jr. listed herself as an owner of lots 3 and 4 when she co-signed the 1993 loan from Key Bank for Mr. Dalton Sr. Mr. Dalton Jr. served as trustee of the trust and listed himself as owner of the Poland property for building permits obtained in 1989, 1990, and 2003. Additionally, respondent contends that petitioners unsuccessfully attempted to claim a homestead exemption for the Poland property.[23]

Notwithstanding the foregoing concerns, we note that, as to petitioners' residing at the residence, they did not move there until 1997, a year after the trust fund tax liability

---

[22] We note that respondent does not contest that the deeds were delivered and recorded.

[23] According to respondent, Mrs. Dalton Jr. requested a homestead exemption for the Poland property because petitioners have paid the real estate taxes. According to Ms. Russo, the assessor denied Mrs. Dalton Jr.'s request because the Poland property was the property of the trust.

arose and after they experienced financial difficulty. Petitioners did not live at the residence from the time they transferred lots 3 and 4 to Mr. Dalton Sr. until 1997. From 1997 to 1999 petitioners lived in the residence with the trustee, subject to an oral lease. The oral agreement required petitioners to pay the costs of mortgage debt service, property taxes, maintenance, and their costs of occupancy. In addition to cash payments of rent to the trust, petitioners cared for Mr. and Mrs. Dalton Sr.[24] The current trustee continues the oral agreement for petitioners to live in the residence. Respondent disputes whether the rent payments are market rate and whether possible benefits may be accruing to the trustee instead of the trust. However, we note that, while below-market rents and improper personal benefits to the trustee potentially may be issues between the trustee and the beneficiaries as a breach of fiduciary duty, Me. Rev. Stat. Ann. tit. 18–A, sec. 7–703 (Supp. 2009); *id.* tit. 18–B, sec. 1001; see also *In re Estate of Stowell*, 595 A.2d 1022, 1025 (Me. 1991), they do not necessarily require a finding of a nominee interest.

As to the 1993 loan and the associated Form 1098 statements from Key Bank of Maine, Mrs. Dalton Jr.'s affidavit states that she signed the mortgage at the request of the lender who knew that the Poland property was owned by the trust but was concerned about the trustee's age. The mortgage was recorded in 1993, approximately 3 years before the tax liability in issue arose. Moreover, the proceeds of the mortgage were used to assist Jonathan Dalton, a trust beneficiary, with his Caribbean rental business.[25] On their 2005 Federal income tax return submitted to respondent's Office of Appeals, petitioners did not claim the mortgage interest as an itemized deduction.[26] Additionally, while petitioners may have attempted to claim a homestead exemption, they were not allowed the exemption by the local tax authority because the trust was the owner of the property.

[24] We note that Mr. Dalton Sr. died on Sept. 13, 1999. Mrs. Dalton Sr. suffered from advanced dementia and Alzheimer's disease and was moved from the residence to an assisted living facility in 2004.

[25] Art. II of the trust agreement allows Mr. Dalton Sr. to use portions of the net income and/or principal of the trust for the health, support, education, maintenance, and comfort of the beneficiaries.

[26] In their attachment to Form 12153, filed during 2004, petitioners claimed not to have made enough money since 1999 to require the filing of a Federal income tax return.

Accordingly, we conclude, weighing both positive and negative aspects, that petitioners' treatment of the Poland property is neutral as a factor in considering whether the trust is petitioners' nominee.

The record on internal controls of the trust is similarly unclear. Mr. Dalton Jr. became trustee upon the death of Mr. Dalton Sr. Mr. Dalton Jr. also had the power to appoint the successor trustee upon the death of Mr. Dalton Sr. Mrs. Dalton Jr.'s brother, Mr. Pray, became trustee in early 2000.[27] The trust did not file any tax returns until 2001, when Mr. Pray raised the issue with petitioners' C.P.A. Respondent also notes that, while petitioners contend that they write a check each month to the trust to cover rent, the record lacks evidence of such payments. Mrs. Dalton Jr. also has access to the trust's bank account and has issued checks on behalf of the trust.

Several factors suggest a respect for internal controls. The appointment of Mr. Pray shows a respect for trust formalities. Indeed, the trust had a trustee other than petitioners during most of its existence. Mr. Dalton Jr.'s time as trustee does not create a nominee interest merely because a trustee holds legal title, as opposed to a beneficial interest. See, e.g., *Drye v. United States*, 528 U.S. at 59 n.6 ("'a taxpayer must have a beneficial interest in any property subject to the lien'" (quoting "Note, Property Subject to the Federal Tax Lien", 77 Harv. L. Rev. 1485, 1491 (1964))). Mr. Pray's sworn affidavit states that he communicates with petitioners three to four times a year regarding budgeting and planning and visits the property at least once a year. The existence of a trust bank account and the filing of trust tax returns, while belated, also suggest a respect for trust formalities and internal controls.

As to breaches of fiduciary duty by the trustee, failure to abide by the terms of a trust by a trustee does not render the trust invalid. Instead, the trustee potentially could be in breach of his fiduciary duty and liable for damages caused by the breach. See Me. Stat. Ann. tit. 18–B, sec. 1001; see also *United States v. Greer*, 383 F. Supp. 2d 861, 869 (W.D.N.C. 2005) (failure to file a tax return as required under the terms of the trust agreement would be a breach of fiduciary duty, but would not cause the trust to fail), affd. 182 Fed. Appx.

---

[27] This appointment as trustee was formalized in writing in June 2000.

198 (4th Cir. 2006). Finally, we note that petitioners, even though Mrs. Dalton Jr. had access to the trust bank account, did not use trust assets to pay personal expenses.

Considering all of the facts and circumstances surrounding the Poland property, we conclude that petitioners' treatment of the trust property is insufficient to create a nominee interest. The trust was validly created, pursuant to Maine law. All of the transfers of the Poland property occurred and were recorded at least 10 years before the liability in question arose. It was not until after the liability arose that petitioners moved to the Poland property, and during part of that time the trustee, Mr. Dalton Sr., lived at the Poland property. Mr. Dalton Sr., acting as trustee, could oversee the Poland property and act to protect it. Any failure by the trustee in his fiduciary duties potentially could create a liability between the trustee and the beneficiaries. However, the trust would still be in effect. See 2 Restatement, Trusts 3d, sec. 64 (2003). Moreover, since Mr. Dalton Sr.'s death, Mr. Pray has served as trustee. During this time Mr. Pray has held meetings with petitioners three to four times a year setting rent and planning maintenance, has ensured the timely filing of tax returns, and has annually visited the property to ensure that the assets are being protected. Finally, petitioners have paid rent to the trust. On the basis of our consideration of the Federal factors analysis, we conclude that petitioners do not have a nominee interest in the Poland property.

The cases that respondent cites in his response to petitioners' motion for summary judgment and in his supplemental motion for summary judgment for an application of a Federal factors analysis involve either an antecedent tax debt, impending tax troubles, or fraudulent conveyances. See *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 727 (11th Cir. 1989) (taxpayer used a holding company to hold assets to escape personal tax liability from gambling operation that had been accruing since 1957); *F.P.P. Enters. v. United States*, 830 F.2d 114, 116 (8th Cir. 1987) (taxpayer created sham trusts to shelter assets from creditors and fraudulently conveyed assets to those trusts); *Loving Saviour Church v. United States*, 728 F.2d at 1086 (taxpayer used sham transfers of assets to church in attempt to escape taxation); *United States v. Dornbrock*, 101 AFTR 2d 2008–906, at

2008–908, 2009–1 USTC par. 50,219, at 87,474 (S.D. Fla. 2008) (IRS examining returns at time of purchase of condo), affd. 309 Fed. Appx. 359 (11th Cir. 2009); *Battle v. United States*, 99 AFTR 2d 2007–2007, at 2007–2009 (E.D. Tex. 2007) (taxpayer used sham trusts to hide assets from Commissioner); *Cody v. United States*, 348 F. Supp. 2d at 684 (taxpayer's relatives put a house in trust for taxpayers to avoid seizure due to prior tax bill); *United States v. Kattar*, 81 F. Supp. 2d 262, 263–265 (D.N.H. 1999) (taxpayer transferred substantially all of his assets to trusts upon notice of investigation for tax evasion); *Towe Antique Ford Found. v. IRS*, 791 F. Supp. 1450, 1457 (D. Mont. 1992) (taxpayer fraudulently conveyed assets to charitable foundation in anticipation of the occurrence of Federal tax liabilities), affd. 999 F.2d 1387 (9th Cir. 1993).[28] The instant case is materially distinguishable from the above-cited cases. As stated above, the transfers to Mr. Dalton Sr. and to the trust occurred well before the tax liability became an issue. Accordingly, we do not conclude that the transfers were an attempt to conceal assets from respondent.

Respondent also cites *Hill v. United States*, 844 F. Supp. 263 (W.D.N.C. 1993), for the application of a Federal factors analysis. In *Hill*, the taxpayer's daughter purchased land with gift funds transferred to her by her grandfather, with the intention of providing a home for herself and the taxpayer. *Id.* at 269. The taxpayer built the home on the property and lived there following the construction. *Id.* The court concluded that the taxpayer's payment of all real estate taxes, utilities, and insurance on the land amounted to rent, and that the taxpayer had no interest in the land in question. *Id.* at 271. The court also concluded that the taxpayer's

---

[28] Respondent also cites *United States v. Engels*, 89 AFTR 2d 2002–898, 2002–1 USTC par. 50,306 (N.D. Iowa 2001) (Engels II), and *Dean v. United States*, 987 F. Supp. 1160, 1164 (W.D. Mo. 1997), in support of a Federal factors analysis. In Engels II, the District Court reaffirmed the grant of the United States' motion for summary judgment and amended its decision regarding the United States' motion to reduce tax assessments to judgments from a denial with prejudice to a denial without prejudice. Respondent most likely meant to cite *United States v. Engels*, 88 AFTR 2d 2001–6429, 2001–2 USTC par. 50,723 (N.D. Iowa 2001) (Engels I), where the taxpayer tried to use trusts to escape personal tax liability. In Engels I, the court applied State law, which it concluded was consistent with a Federal factors analysis, to determine whether the trusts were nominees of the taxpayer. *Id.* at 2001–6436, 2001–2 USTC par. 50.723 at 90,008 ("determining trust validity under Iowa law requires an examination of the relationship among the parties creating, administering and benefitting from the trust").

In *Dean v. United States*, *supra* at 1164, the court also applied State law, which it determined was consistent with a Federal factors analysis.

daughter was not the nominee of the taxpayer and that the taxpayer had no interest in the property. *Id.* at 271, 274. Additionally, the Court declined to impose a resulting trust or a constructive trust because of the conclusion that the funds and labor were gifts by the taxpayer to the taxpayer's daughter. *Id.* at 273.

The undisputed facts of the instant case are similar to the facts in *Hill*. Petitioners' payment of their costs of occupancy, maintenance, mortgage debt service, and property taxes are rental payments to the trust in exchange for living in the residence. Additionally, petitioners' labor provided for the additions to the residence provided low-cost construction for the trust as in *Hill*, and similarly may be viewed as gifts to the trust. Finally, as we concluded above, it would be improper to impose a resulting trust on the Poland property, as the transfer of lots 3 and 4, and the purchase price of lot 5, were gifts to Mr. Dalton Sr. Therefore, we find our conclusions in the instant case consistent with *Hill*.

On the basis of the foregoing, we hold that the trust is not petitioners' nominee under the Federal factors analysis.[29] We conclude that petitioners do not have an interest in the Poland property that constitutes property or rights to property to which the Federal tax levy could attach under Maine law or a Federal factors analysis. See sec. 6331.

Consequently, we hold that respondent's determination to proceed with the levy was an abuse of discretion because respondent rejected petitioners' offer-in-compromise on the basis that it did not include a nominee interest in the Poland property.[30] See *Vinatieri v. Commissioner*, 133 T.C. 392, 402

[29] In *Richards v. United States*, 231 Bankr. 571 (E.D. Penn. 1999), the court held that where a valid trust is not respected by the parties, for Federal tax purposes a nominee relationship may exist. However, in *Richards* the bankrupt served as the trustee of the property, represented to third parties that the property was his own instead of belonging to the trust, and did not respect trust formalities. In the instant case, we conclude that the trust was validly formed before the tax liability arose, petitioners respected the trust, and a third-party trustee has overseen trust assets for most of the time the trust has been in existence. Ultimately, we conclude that a nominee relationship did not exist. Therefore, we find *Richards* distinguishable.

[30] Because we hold respondent's determination to proceed with the levy on the Poland property was an abuse of discretion, we need not consider petitioners' argument that respondent disregarded our order to create a proper record and instead conducted a de novo review of the grounds for asserting a nominee ownership while taking into account both Maine law and a Federal factors analysis. We also decline to address petitioners' argument that pursuant to Me. Rev. Stat. Ann. tit. 14, sec. 752 (2003), respondent is barred by the 6-year period of limitations on civil actions to question the legitimacy of the transfers from petitioners to Mr. Dalton Sr. and the trust.

(2009); *Woodrall v. Commissioner*, 112 T.C. 19, 23 (1999). Petitioners are entitled to summary judgment.

We have considered all of the issues raised by the parties, and, to the extent they are not discussed herein, we conclude that they are without merit, unnecessary to reach, or moot.

To reflect the foregoing,

> *An appropriate order and decision will be entered for petitioners.*